# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**L. ROSS ROWLAND**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 12 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JARRAD L. MASTIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1109-CR-890 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Richard A. Dailey, Judge
Cause No. 18C02-1001-FA-01

**April 12, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jarrad L. Mastin ("Mastin") appeals his convictions and sentence for three counts of Child Molesting, one as a Class A felony and two as Class B felonies.[1]  We affirm.

**Issues**

Mastin presents five issues for review, which we consolidate and restate as the following four issues:

I.      Whether the admission of hearsay testimony was fundamental error;
II.     Whether there is sufficient evidence to support the child molesting convictions based upon sexual intercourse;
III.    Whether he was denied a fair trial because of prosecutorial misconduct; and
IV.     Whether his sentence is inappropriate.

**Facts and Procedural History**

Mastin's daughter, K.M., was born on July 15, 2004, and placed in the guardianship of her maternal grandmother, Diana Winans ("Winans").  In 2009, K.M. began experiencing severe problems using the bathroom.  According to Winans, K.M. was "peeing blood" and screaming, so Winans took K.M. to the hospital.  (Tr. 78.)

K.M. was examined and found to have blisters on her labia and rectum.  She was originally diagnosed with canker sores; however, test results later confirmed that K.M. had been infected with Type II genital herpes.  In an interview with City of Muncie police officers, Mastin confessed to having engaged in sexual contact with K.M.

On January 28, 2010, the State charged Mastin with eight counts of child molesting.

---

[1] Ind. Code § 35-42-4-3.

Five counts were dismissed and, on July 18, 2011, Mastin was brought to trial before a jury on the remaining three counts (two alleging sexual intercourse and one alleging deviate sexual conduct). He was convicted as charged. On August 30, 2011, Mastin was given consecutive sentences of twenty years for each Class B felony conviction and fifty years for his Class A felony conviction, providing for an aggregate sentence of ninety years. He now appeals.

**Discussion and Decision**

I. Hearsay Testimony

K.M. did not testify at Mastin's trial. During Winans' testimony, the prosecutor questioned Winans as to whether "something happened" during the ride home from the nurse practitioner examination. (Tr. 82.) Winans responded, "[K.M.] asked me why the lady," whereupon Mastin interrupted and successfully lodged a hearsay objection. (Tr. 82.)

After the State's offer of proof and argument regarding a hearsay exception for medical diagnosis or treatment, the trial court reversed its ruling. Winans was ultimately permitted to testify that K.M. had begun to talk about "why the lady stuck a Q-tip down there and rub[bed] it," wondered aloud if Winans was "mad at her" and stated, "well my daddy plays secret games with me." (Tr. 84.) Because Mastin did not contemporaneously object, he now couches his argument in terms of fundamental error. He contends that the admission of K.M.'s statement regarding secret games denied him a fair trial because her statement was not made for purposes of obtaining a medical diagnosis or treatment and because the trial

3

court failed to conduct a hearing regarding K.M.'s treatment as a protected person.[2]

The defendant's failure to lodge a contemporaneous objection at the time evidence is introduced at trial results in waiver of the error on appeal. Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010), reh'g denied. "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." Id. A claim that has been thus waived can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. Id. The fundamental error exception is "'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" Id. (quoting Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). The exception is available only in "'egregious circumstances.'" Id. (quoting Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003)).

The trial court admitted K.M.'s statement pursuant to Indiana Evidence Rule 803(4), which recognizes the following as an exception to the general rule that hearsay is inadmissible evidence:

> Statements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

---

[2] The Protected Person statute, Indiana Code Section 35-37-4-6, allows for admission of otherwise inadmissible hearsay evidence relating to specified crimes whose victims are deemed "protected persons." Tyler v. State, 903 N.E.2d 463, 465 (Ind. 2009). The trial court must find any videotaped statements to be reliable before admission and the protected person must be available for cross-examination. Id. at 466.

The rationale for this hearsay exception is that a declarant has a personal interest in obtaining a medical diagnosis and treatment, and this interest motivates the patient to provide truthful information. Sibbing v. Cave, 922 N.E.2d 594, 598 (Ind. 2010). Although the statement need not be made to a physician, it must be made "to advance a medical diagnosis or treatment" to fall within the purview of Evidence Rule 803(4). In re Paternity of H.R.M., 864 N.E.2d 442, 446 (Ind. Ct. App. 2007).

Here, we must agree with Mastin that K.M.'s statement to her grandmother, made after a medical examination had concluded and no health professional was present, was not made to advance her medical diagnosis or treatment. We also recognize that the trial court apparently did not conduct a hearing, as contemplated by Indiana Code Section 35-37-4-6(e), before issuing its ruling that K.M. could be treated as a "protected person" and need not testify in open court.

Nonetheless, the erroneous admission of evidence will be disregarded unless it affects the substantial rights of a party. Hoglund v. State, 962 N.E.2d 1230, 1238 (Ind. 2012). Although K.M.'s statement that "daddy plays secret games" should not have been admitted, there is substantial independent evidence of guilt. (Tr. 84.) In his police interview, Mastin confessed that he had placed his penis in K.M.'s mouth, had licked K.M.'s vaginal area, and had pushed aside K.M.'s underwear and rubbed his penis on her for a few minutes. We are not persuaded that the hearsay reference to secret games deprived Mastin of a fair trial.

## II. Sufficiency of the Evidence

Mastin next contends that there is insufficient evidence to support the child molesting

5

convictions premised upon his acts of sexual intercourse with K.M. in July of 2008 and in March of 2009.[3] More specifically, he denies that there is evidence of penetration.[4]

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and the reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). In so doing, we do not assess witness credibility or reweigh the evidence. Id. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id.

To prove the Class B felonies, as charged, the State was required to show that Mastin performed sexual intercourse with K.M., a child under fourteen years of age. Ind. Code § 35-42-4-3(a). Sexual intercourse is "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-41-1-26.

The statute defining sexual intercourse does not require that the vagina be penetrated, only that the female sex organ be penetrated. Short v. State, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991). Penetration of the external genitalia, or vulva, is sufficient to support an unlawful sexual intercourse conviction. Id. To sustain a conviction for child molesting or incest, proof of the "slightest penetration" of the female sex organ by the male sex organ is sufficient. Dinger v. State, 540 N.E.2d 39, 40 (Ind. 1989). Penetration can be inferred from

---

[3] He does not challenge the sufficiency of the evidence to support his conviction for child molesting by criminal deviate conduct.

[4] During his police interview, Mastin admitted to rubbing his penis against K.M. on occasions in July of 2008 and March of 2009. However, he adamantly denied penetration of K.M.'s vagina.

circumstantial evidence. Pasco v. State, 563 N.E.2d 587, 590 (Ind. 1990).

In his police interview, Mastin described in some detail his sexual contact with K.M. He stated that he would lie sideways as K.M. lay lengthwise and on her back. Her legs were apart. Mastin would push aside K.M.'s underwear and "rub on" her vagina with his penis. (State's Ex. 10.)

Holly Renz, a sexual assault nurse-examiner who examined K.M., testified that K.M. had "scars to her genitals" from herpes lesions. (Tr. 134.) She further testified that K.M. had circular areas of scarring on her labia majora and bilateral redness of her labia minora.

This is sufficient evidence from which the factfinder could conclude that Mastin's sex organ penetrated K.M.'s sex organ.

### III. Prosecutorial Misconduct

Mastin claims that prosecutorial misconduct denied him a fair trial when, in closing argument, the prosecutor stated: "Why does a man touch a female's vagina with his penis? Use your common sense and reasoning. Why would he be willing to put his penis in her mouth, but not her vagina?" (Tr. 175.) According to Mastin, the prosecutor invited the jury to engage in speculation.

However, Mastin lodged no objection at trial to any portion of the prosecutor's closing argument. Thus he preserved no such issue for appeal. See Robinson v. State, 693 N.E.2d 548, 552 (Ind. 1998) (clarifying that the proper procedure in the face of alleged improper argument is to request an admonishment, and mistrial if necessary, but that failure to so move results in waiver of the issue).

7

## IV. Appropriateness of Sentence

A person who commits a Class A felony has a sentencing range of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4. A person who commits a Class B felony has a sentencing range of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. Mastin was sentenced to fifty years for one Class A felony and twenty years for each Class B felony. All sentences were consecutive. Accordingly, Mastin received the maximum possible sentence.

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007) (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The nature of Mastin's offenses is that he violated a position of trust with his biological daughter. Mastin gained access to K.M. when K.M. visited Mastin's mother overnight. Mastin warned K.M. not to tell anyone about their "secret games." The molestations began when K.M. was four years old and continued until K.M. was diagnosed with Type II genital herpes and Mastin was arrested.

8

K.M. suffered an initial outbreak that her grandmother described as "horrible." (Tr. 90.) K.M. had blisters on her vagina and rectum, and would cry and scream because it was so painful to urinate. Kathryn Joyner, nurse practitioner, observed lesions on K.M.'s buttocks and explained that K.M. "could not pee because of ulcerations and swelling" and that her vulva was "all ulcerated." (Tr. 116-117.) According to Dr. Christopher Belcher, an infectious disease specialist to whom K.M. was referred after "frequent outbreaks of herpes," the "underwear genital area" was affected and K.M. was prescribed long-term medication. (Tr. 105.) Although milder and less frequent outbreaks could be anticipated with proper medication, it was not expected that K.M. would ever be cured.[5]

As for the character of the offender, Mastin has had no adult criminal convictions, other than for a misdemeanor trespass offense. Generally, this would militate toward a less than maximum sentence. However, the trial court determines the weight assigned to mitigating circumstances and a lack of criminal history does not automatically outweigh any valid aggravating circumstances. McElroy v. State, 865 N.E.2d 584, 592 (Ind. 2007). Here, given the very young age of the victim, the protracted length of time over which the molestations occurred, and the devastating consequences suffered by the victim, we are not persuaded that the trial court imposed upon Mastin an inappropriate sentence.

**Conclusion**

Mastin has not demonstrated that the trial court's evidentiary rulings denied him a fair

---

[5] Dr. Belcher testified that "some outbreaks stop," but his expectation was that K.M. would suffer less severe outbreaks with time, as opposed to none. (Tr. 104.)

9

trial. There is sufficient evidence from which the jury could conclude that Mastin committed child molesting by sexual intercourse. His ninety-year sentence is not inappropriate.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.