## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2016, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy L. Hall,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 10, 2016<br><br>Court of Appeals Case No.<br>02A03-1508-CR-1134<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D05-1401-FA-2 |

**Najam, Judge.**

## Statement of the Case

[1]     Timothy L. Hall ("Hall") appeals his convictions for three counts of child molesting, as a Class A felony, one count of child molesting, as a Class C felony, one count of sexual misconduct with a minor, as a Class B felony, and

one count of sexual misconduct with a minor, as a Class C felony, following a

jury trial. He raises three issues on appeal, namely:

1. Whether the State presented sufficient evidence to support his convictions.

2. Whether he was denied a fair trial due to the trial court's exclusion of certain evidence.

3. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## Facts and Procedural History

On January 2, 2014, the State charged Hall with the following crimes involving his minor daughter, B.B.: counts I through VI, child molestation of a minor under age fourteen, as Class A felonies; count VII, child molesting of a minor under age fourteen, as a Class C felony; count VIII, sexual misconduct with a minor at least age fourteen but less than sixteen, as a Class B felony; and count IX, sexual misconduct with a minor at least age fourteen but less than sixteen, as a Class C felony.[1] On April 25, the State also filed count X, alleging Hall is a

---

[1] The precise charges were: count I, as a Class A felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2006, and December 31, 2006; count II, as a Class A felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2007, and December 31, 2007; count III, as a Class A felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2008, and December 31, 2008; count IV, as a Class A felony, alleging Hall performed or submitted to sexual

habitual offender pursuant to Indiana Code Section 35-50-2-8(a).  During a jury trial on June 30 and July 1, 2015, the parties submitted evidence of the following facts.

[4]  B.B. was born on October 27, 1997.  Her mother is J.B., and her father is Hall. B.B. had no contact with Hall until she was approximately seven years old. Prior to that time, she had lived both with her mother and in foster homes in Allen County.  On October 9, 2005, when B.B. was living with her mother and her mother's boyfriend, B.B.'s mother took her to the Fort Wayne Sexual Assault Treatment Center where B.B. was assessed due to her complaint that Hall had sexually abused her.  The examination of B.B. was consistent with her complaint that she was sexually abused, and she was discharged into the care of the Indiana Department of Child Services ("DCS").[2]  No evidence was presented as to what action DCS took regarding B.B.'s October 2005 allegation of sexual abuse.

---

intercourse with B.(a minor under age fourteen) "sometime" during the period of time between January 1, 2009, and December 31, 2009; count V, as a Class A felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2010, and December 31, 2010; count VI, as a Class A felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2011, and October 26, 2011; count VII, as a Class C felony, alleging Hall did perform or submit to fondling or touching with B.B. (a minor under age fourteen) "sometime" during the period of time between January 1, 2006, and October 26, 2011; count VIII, as a Class B felony, alleging Hall performed or submitted to sexual intercourse with B.B. (a minor at least age fourteen but under age sixteen) "sometime" during the period of time between October 27, 2011 and December 31, 2012; and count IX, as a Class C felony, alleging Hall did perform or submit to fondling or touching with B.B. (a minor at least age fourteen but under age sixteen) "sometime" during the period of time between October 27, 2011 and December 31, 2012.  Amended App. of Appellant at 17-34.

[2]  At the time of the events in this case, DCS was named Child Protective Services ("CPS"), and that is the entity to which the record refers.

[5] In late 2005 or early 2006, DCS placed B.B. with Hall in Allen County. At trial, B.B. testified that Hall consistently had sexual intercourse with her and otherwise sexually abused her the entire time she had lived with him, which was until the end of 2012, except for a brief period of time when she was thirteen years old and placed in residential treatment. At the time of trial, B.B. was fifteen years old, and she testified that she knew what "sexual intercourse" meant. Tr. at 191-92. She testified that she had slept in Hall's bed with him on a regular basis and that their relationship became one of husband and wife or boyfriend and girlfriend. B.B. testified that, when she was approximately eleven years old, Hall put her on birth control pills because he did not want her to get pregnant from having sex with him. Hall set an alarm clock for seven o'clock p.m. every day to remind B.B. to take the birth control pills. Hall enrolled B.B. in an on-line school rather than sending her to high school in the ninth grade. B.B. testified she did not tell DCS about the continuing sexual abuse because she had nowhere else to go; she did not want to go into foster care again, and she could not live with her mother due to her mother's on-going inability to properly care for her.

[6] The State also presented the testimony of K.C., B.B.'s half-sister, who testified that, when B.B. was eight years old, B.B. told K.C. that Hall was touching her in sexual ways and that, when B.B. was eleven years old, B.B. told K.C. that Hall was having sexual intercourse with her.

[7] In August 2013, Hall was arrested on charges of sexual misconduct with a minor (other than B.B.), and he was incarcerated. After Hall was arrested, B.B.

was placed with her paternal grandmother. B.B. ran away from her grandmother's house and then began living with her mother, J.B. B.B. told her mother about the years of sexual abuse by Hall and, on November 13, 2013, J.B. and B.B. reported the sexual abuse to the Fort Wayne Police Department. While Hall was incarcerated and before B.B. had reported his sexual abuse, Hall wrote B.B. letters in which he made the following statements: "do you want us to have the same relationship as before I came here? . . . I love you and need things to be as they were but if your [sic] out there giving kitty away then it's over!," State's Ex.3; "don't leave these letters around where people can read them," *Id.*; "don't have dudes in our house!," *Id.*; "Please don't be that type of girl that love [sic] me when I'm around and a wild flirty girl when I'm not," *id.*; and "keep that thing tight for me," *id.*

[8] The jury returned verdicts of "not guilty" as to counts I through III, and "guilty" as to counts IV through IX. After Hall's stipulation that he had also accumulated two prior felonies, the trial court found that he was a habitual offender. The court entered judgments of convictions as to counts IV through IX and, following a sentencing hearing, sentenced Hall to forty years for each of counts IV, V, and VI; four years for count VII; twenty years for count VIII; and four years for count IX. Counts VII and IX were concurrent with each other and with the previous counts. Count VIII was enhanced by thirty years due to Hall's habitual offender status. Thus, the trial court imposed an aggregate sentence of 170 years. This appeal ensued.

# Discussion and Decision

Initially, we note that the State has failed to file a timely appellee's brief in this appeal, and, in a separate order, we have denied the State's motion for an extension of time to file its brief.[3] Therefore, the trial court's decision may be reversed upon a showing of *prima facie* error. Ind. Appellate Rule 45(D); *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065 (Ind. 2006) (holding that, when the appellee has failed to submit a brief, the court on appeal need not undertake the burden of developing an argument on the appellee's behalf; rather, the court on appeal will reverse the trial court's judgment if the appellant's brief presents a case of *prima facie* error).

## *Issue One: Sufficiency of the Evidence*

Hall maintains that the State failed to provide sufficient evidence to support his convictions. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorably to the trial court's ruling," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005). We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a

---

[3] The State's motion was denied because it did not present grounds sufficient to justify its delay in proper filing.

reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Jackson*, 925 N.E.2d at 375.

[11] To prove Hall committed child molesting, as Class A felonies, and sexual misconduct with a minor, as a Class B felony, the State was required to prove that he had sexual intercourse with B.B. when she was a minor.[4] Ind. Code § 35-42-4-3(a)(1) and (b) (2012).[5] Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-31.5-2-302. For purposes of a charge of child molesting or incest, penetration may be inferred from circumstantial evidence. *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012), *trans. denied*. And the testimony of the victim alone may be sufficient to support a conviction of child molestation by sexual intercourse. *See, e.g.*, *Smith v. State*, 779 N.E.2d 111 (Ind. Ct. App. 2002), *trans. denied*.

[12] To prove child molesting as a Class C felony and sexual misconduct with a minor as a Class C felony, the State was required to prove that Hall performed "any fondling or touching, of either the child or the older person, with intent to

---

[4] The State must also show that B.B. was less than fourteen years old for Class A child molesting, and between fourteen and sixteen years old for Class C child molesting. However, B.B.'s date of birth is undisputed and shows that she was a minor child within those age ranges at all relevant times.

[5] Hall's convictions related to years 2009 through 2012, and the statute was materially the same in each of those years.

arouse or satisfy the sexual desires of either the child or the older person." I.C. § 35-42-4-3(b); I.C. § 35-42-4-9(b).

[13] Here, B.B., who was fifteen years old when she testified, stated that Hall had touched her in sexual ways, had oral sex with her, and had sexual intercourse with her on many occasions, and "at least once every year," between 2005 and 2012. She testified that she knew what "sexual intercourse" meant.[6] Tr. at 189-92, 194, 196. She provided a detailed description of the first such incident, and she testified that many other such incidents occurred each year when she was living with Hall.[7] B.B.'s testimony was corroborated by her sister's testimony that B.B. had told her about the sexual abuse by Hall when B.B. was eight years old and the sexual intercourse with Hall when B.B. was eleven years old. B.B.'s testimony was also corroborated by the letters Hall wrote to her while he was imprisoned. This is sufficient evidence that Hall had sexual intercourse with his minor daughter, B.B., during the specified time periods. It is also sufficient evidence that Hall fondled or touched B.B. with the intent to satisfy his sexual

---

[6] Hall claims B.B.'s testimony is not sufficient because she did not explain that sexual intercourse meant "her sex organ was penetrated by her father's sex organ." Amended Br. of Appellant at 16. However, a detailed anatomical description of penetration is not necessary to prove child molestation based on sexual intercourse. *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996).

[7] Hall contends that B.B.'s testimony was "incredibly dubious" because she testified that Hall had sexual intercourse with her every day "over a seven year period." Appellant's Br. at 17. He also challenges his conviction for count VI on the grounds that B.B. was not living with him during much of that time period. However, B.B. testified that Hall had sexual intercourse with him "at least once a year" *while she lived with him*. Tr. at 195-96 (emphasis added). This, along with B.B.'s other testimony, is sufficient evidence of the crimes of which Hall was convicted—i.e., having sexual intercourse with and/or fondling B.B. "sometime" during each of the specified years and/or time periods. Amended App. of Appellant at 23-34.

desires during the specified time periods. The State presented sufficient evidence to support Hall's convictions.

## *Issue Two: Exclusion of Evidence*

[14] Hall contends that the trial court erred in excluding certain evidence. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon an abuse of that discretion. *Collins v. State*, 835 N.E.2d 1010, 1016 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. To reverse a trial court's decision to exclude evidence, there must be (1) error by the court, (2) that affects Defendant's substantial rights, and (3) the defense must have made an offer of proof or the evidence must have been clear from the context. *Stroud v. State*, 809 N.E.2d 274, 283 (Ind. 2004). However, "[t]rial court error in excluding evidence is harmless if the probable impact of the error on the jury, in light of all of the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties." *Hauk v. State*, 729 N.E.2d 994, 1002 (Ind. 2000).

[15] Hall contends that the trial court erred in excluding evidence that B.B. had been gang raped by fellow students, which caused her to be terrified of going to school. He maintains that such evidence was necessary to show that he enrolled her in an on-line high school not to isolate her from others to make sexual abuse easier but because she did not want to go to school due to fear of the rapists. Hall also contends that evidence of the gang rape would provide some proof that he did not put B.B. on birth control because he was having

sexual intercourse with her but, rather, in anticipation of "the tragic event that the child would be victimized again." Amended Br. of Appellant at 19.

[16] However, even assuming for the sake of argument that the trial court erred in excluding this evidence, any such error was harmless in that it likely had a minimal impact on the jury given all the other evidence of Hall's sexual abuse of B.B., including his own letters to her. Thus, even if the trial court erred in excluding evidence that B.B. had been gang raped by fellow students—and we do not hold that it did so err—any such error was harmless as its impact on the jury would have been so minor that it would not have affected Hall's substantial rights. *Hauk*, 729 N.E.2d at 1002.

## Issue Three: Inappropriateness of Sentence

[17] Hall also contends that his sentence is inappropriate in light of the nature of the offenses and his character. Article 7, Sections 4 and 6 of the Indiana Constitution "authorize[] independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006).

However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush*, 875 N.E.2d at 812 (alteration original).

[18]     Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed in inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[19]     Hall first contends that the nature of the offenses does not support an enhanced sentence. He admits, as certainly he must, that the crimes of which he was convicted are severe and "heinous." Amended Br. of Appellant at 30. Yet he maintains that the imposition of an aggregate sentence of 170 years for his five felony convictions for sexually abusing his own daughter over a period of four

years is "vindictive." *Id*. We disagree. The trial court found no mitigating factors, and it found as an aggravating factor the large number of repeated criminal sexual acts over an extensive period of time committed against his own child who "was totally at his mercy." Sentencing Tr. at 28. Given that Hall repeatedly violated a position of trust with his biological daughter over a period of years, we cannot say that his sentence is inappropriate in light of the nature of his offenses.

[20] Hall also maintains that the sentence is inappropriate in light of his character. He points to evidence that he is forty-five-years old with no history of juvenile delinquency. However, the trial court did not recognize that evidence as a mitigating circumstance. Rather, the trial court focused on Hall's repeated betrayals of his daughter's trust over a period of years, which is evidence of his poor character. Moreover, a criminal history as an adult is evidence of a person's character, *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*, and Hall's criminal history is extensive. He has six prior misdemeanors and five prior felony convictions, one of which is a conviction of sexual misconduct with a minor other than B.B. Thus, we cannot say that his sentence is inappropriate in light of his character.

## Conclusion

[21] The State has provided sufficient evidence to support Hall's convictions; any error in the exclusion of evidence that B.B. was previously gang raped was harmless; and Hall has failed to persuade us that his sentence is inappropriate in light of the nature of his offenses and his character.

Affirmed.

Robb, J., and Crone, J., concur.