## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Edgar
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J. T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Juan Escatel-Flores,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 9, 2017

Court of Appeals Cause No.
49A05-1606-CR-1467

Appeal from the Marion Superior Court

The Honorable Grant Hawkins, Judge

Trial Court Cause No. 49G05-1505-FA-17612

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Juan Escatel-Flores (Escatel-Flores), appeals his conviction for child molesting, a Class A felony, Ind. Code § 35-42-4-3(a)(1) (2013).

We affirm.

# ISSUE

Escatel-Flores presents one issue on appeal, which we restate as follows: Whether the State presented sufficient evidence beyond a reasonable doubt to support Escatel-Flores's conviction for child molesting, a Class A felony.

# FACTS AND PROCEDURAL HISTORY

Sandra Posada (Posada) initially met Escatel-Flores at a beauty salon where she worked, and shortly thereafter, the two began dating. In December of 2013, Posada was living at 1529 S. Norfolk Street, Indianapolis, Marion County, Indiana, with her brother; niece; niece's boyfriend; and son, F.T., born on January 15, 2004. Posada shared her bedroom and a bed with her son. On the times that Escatel-Flores spent the night at Posada's house, he would sleep in the same bed with Posada and F.T. F.T. usually felt uncomfortable because they would all sleep very close to each other.

On the afternoon of December 20, 2013, there was a party at Posada's house for Posada's niece. Shortly after midnight, F.T. left the party and went to bed. F.T. slept in his t-shirt and shorts. Sometime before 2:00 a.m., Posada and

Escatel-Flores decided to retire to bed. When they entered Posada's bedroom, the lights were on and F.T. was asleep. At that point, Posada started arguing with Escatel-Flores because he was very inebriated and out of control. After stating several unintelligible words, Escatel-Flores got undressed and he laid next to F.T. on the left side of the bed. To avoid any facial contact and additional arguments with Escatel-Flores, Posada slept on the foot of the bed with her feet toward the head of the bed. At this point, the bedroom lights were off. At some point, Posada felt Escatel-Flores moving, and then she "heard some noises" as "if somebody was licking something." (Tr. p. 24). Posada was not asleep but was using her phone. After hearing the licking sounds again, Posada activated the flashlight on her cellphone and shone the light toward Escatel-Flores's face. Because there were blankets on the bed, Posada could only see that Flores's face was "in the direction of the parts of my son." (Tr. p. 24). Posada questioned Escatel-Flores what he was doing but Escatel-Flores did not respond; rather, he became furious and stormed out of the bedroom. Despite the commotion, F.T. remained asleep. Posada thereafter examined F.T.'s clothing and she noted that his shorts were "a little down, not pulled down all the way, but a little down." (Tr. p. 26). When Escatel-Flores exited Posada's bedroom, he encountered his brother, who was also living at Posada's house. While Posada had not accused him of any specific act, Escatel-Flores complained to his brother that "she thinks that I was doing oral sex to her son." (Tr. p. 27). Somebody contacted the police, and F.T. did not wake up until the police arrived.

[6]     The following morning, Posada took F.T. to St. Vincent Hospital to have a sexual assault examination. The sexual assault examining nurse conducted a head-to-toe assessment looking for injuries, and she also shone a florescent light to help identify bodily fluids on F.T.'s body and clothing. Using a rape kit, the examining nurse took several swabs of F.T.'s mouth, lip, hands, penis, and groin region. In addition, the nurse collected F.T.'s t-shirt and shorts and sealed them in a brown bag.

[7]     Approximately one year later, Detective Christopher Lawrence (Detective Lawrence) of the Indianapolis Metropolitan Police Department located Escatel-Flores. Escatel-Flores's buccal swab was thereafter obtained for DNA analysis. Sarah Klassen (Klassen), a serologist with the Indianapolis Marion County Forensic Services Agency, tested F.T.'s clothes and rape kit for bodily fluids. On October 1, 2014, Klassen prepared a serology report concluding that there was no seminal material detected on the swabs taken from F.T.'s penile shaft, penile glad, right and left groin, anus, lower abdominals, hands, lips, mouth, or clothing. However, Klassen indicated that amylase, an enzyme found in saliva, was present on the swabs taken from F.T.'s left groin, and the lower portion of F.T.'s shirt. Following that serologist report, the rape kit samples and clothes were then subjected to DNA analysis. On May 6, 2015, DNA analyst Shannin Guy (Guy) prepared a report and concluded that the interior waist band of F.T.'s shorts contained Escatel-Flores's DNA; Escatel-Flores's DNA was on F.T.'s penile shaft; and F.T.'s left groin contained both major and minor DNA profiles, with Escatel-Flores being the major DNA contributor.

[8] On May 22, 2015, the State filed an Information, charging Escatel-Flores with one Count of child molesting, a Class A felony. Escatel-Flores waived his right to a trial by jury. On May 16, 2016, the trial court conducted Escatel-Flores's bench trial. At the close of the evidence, the trial court determined that Flores was guilty as charged. On June 23, 2016, the trial court sentenced Escatel-Flores to thirty-five years in the Department of Correction, with five years suspended to probation.

[9] Escatel-Flores now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Escatel-Flores claims that the State presented insufficient evidence beyond a reasonable doubt to support his conviction for child molesting, a Class A felony. Our standard of review for cases dealing with the sufficiency of evidence is well established. We will consider only the probative evidence and the reasonable inferences supporting the verdict in order to determine whether a reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Mastin v. State*, 966 N.E.2d 197, 201-02 (Ind. Ct. App. 2012), *trans. denied*. In so doing, we neither assess the credibility of witnesses nor reweigh the evidence. *Id*. at 202. On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence. *Vehorn v. State*, 717 N.E.2d 869, 876 (Ind. 1999). It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence. *Id*.

[11]  In order to convict Escatel-Flores of Class A felony child molesting, the State was required to prove that he, being "at least twenty-one (21) years of age," "with a child under fourteen (14) years of age, perform[ed] or submit[ted] to sexual intercourse or deviate sexual conduct." I.C. § 35-42-4-3(a)(l). At the time of the offense, "deviate sexual conduct" was defined, in part, as "an act involving . . . a sex organ of one (1) person and the mouth or anus of another person." I.C. § 35-31.5-2-9. On appeal, Escatel-Flores contends that the State failed to carry its burden because there is no evidence of sexual deviate conduct. Specifically, Escatel-Flores asserts that the State failed to prove any contact involving his mouth and F.T.'s penis. In his appellate brief, Escatel-Flores argues that even though his DNA was found on F.T.'s left groin and penile shaft, Klassen, the serologist, testified that she did not find saliva on those two areas. As such, Escatel-Flores argues that since no saliva or seminal material was found in the samples tested, the evidence leaves us with an inference that Escatel-Flores may have come into contact with F.T.'s penis, but he did not use his mouth to touch F.T.'s penis.

[12]  At Escatel-Flores' bench trial, Klassen explained that her task in this case was to test the rape kit and F.T.'s clothes for seminal material and saliva. In testing the samples, Klassen explained, "I'm taking a very [] small representative portion so that a majority of the sample can be preserved for DNA testing." (Tr. p. 92). In all the sample swabs that Klassen tested, no seminal material was detected. In testing for saliva, Klassen explained that she used a test called "amylase diffusion" and she expounded that amylase "is an enzyme within

saliva." (Tr. p. 91). Klassen stated that if a sample had elevated levels of amylase activity, saliva was present. In two of the samples she tested, she detected amylase. The swab taken from F.T.'s left groin appeared to show amylase activity, but the levels were "inconclusive for the presence of saliva." (Tr. p. 93). In another sample taken from the upper front part of F.T.'s t-shirt, Klassen noted higher levels of amylase activity, and her testing confirmed the presence of saliva in the sample. Guy, the DNA analyst who subjected the same sample swabs for DNA testing, first explained that the low quantities or volumes of amylase activity shown in this case could have been attributed to the fact that a serology test only extracts 10% of the swabs for testing, and the remainder of the swabs are preserved for DNA analysis. Specifically, Guy explained that "I'm taking 90 percent of the swabs where they are taking less than 10 percent of the swabs. So that I think also affects the amount of amylase that may or may not be detected." (Tr. p. 115). Notwithstanding the low levels of amylase activity detected in swabs, Guy testified that she was able to extract DNA from the swabs, and she confirmed that with a degree of scientific certainty, Escatel-Flores' DNA was found on F.T.'s penile shaft and left groin. Here, based on the DNA evidence, the fact-finder could have determined that Escatel-Flores performed deviate conduct with F.T.

[13] Moreover, we find that there was enough circumstantial evidence to support the finding that Escatel-Flores molested F.T. At Escatel-Flores' bench trial, F.T.'s mother, Posada, testified that shortly after she and Escatel-Flores laid down in bed, she heard licking sounds. After hearing those sounds again, she turned her

cellphone's flashlight and shone it toward the head of the bed. At that moment, Posada saw Escatel-Flores' face around her son's genital area. Posada did not accuse Escatel-Flores of anything; rather, she questioned him about what he was doing. Instead of responding to Posada's questioning, Escatel-Flores became agitated and exited the bedroom. At that point, Posada took the time to examine F.T.'s clothing and saw that F.T.'s shorts were pulled down a little; however, she acknowledged that it could also have been caused by the fact that F.T. was an active sleeper and that commonly resulted in his shorts being lowered or his shirt being pulled up. In addition, Posada testified that shortly after Escatel-Flores stormed out of her bedroom, Escatel-Flores broached the subject of oral sex and informed his brother that Posada thought he had performed "oral sex" on F.T. (Tr. p. 27).

[14] In the instant case, we find that Escatel-Flores' arguments amount to a request to reweigh the evidence, which we will not do. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003). Posada's testimony, which was corroborated by the DNA evidence, was sufficient to support Escatel-Flores's conviction for child molesting, and the jury was allowed to weigh the evidence and make reasonable inferences from it. Escatel-Flores's contentions to the contrary must fail.

## CONCLUSION

[15] Based on the foregoing, we conclude that there was sufficient evidence to support Escatel-Flores's conviction for child molesting, a Class A felony.

[16]     Affirmed.

[17]     Crone, J. and Altice, J. concur