## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 31 2018, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrew Biggs,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

May 31, 2018

Court of Appeals Case No.
71A05-1709-CR-2128

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1610-FB-1

**May, Judge.**

[1] Andrew Biggs appeals his conviction of Class B felony rape.[1]  Biggs asserts the State's evidence was insufficient to prove: (1) sexual intercourse occurred; and (2) A.B. had been unaware that intercourse was occurring.  We affirm.

# Facts and Procedural History

[2] On December 14, 2013, A.B. met friends at a bar.  She had a number of drinks and then rode with friends to another bar, where she continued drinking.  Friends drove A.B. back to the original bar, where her car was parked, between 2:00 and 3:00 in the morning of December 15.  Biggs, who was drinking and riding along with the same group of friends, offered A.B. a ride.  A.B. did not want to go with Biggs because he had been pressuring A.B. to have sex with him, but she knew she was too intoxicated to drive.  The last thing A.B. remembers is getting into Biggs' car.

[3] When A.B. woke up, she was in Biggs' bed, her "underwear was kind of wet[,] and [she] had like a little bit of pain . . . in [her] vagina area."  (Tr. Vol. 2 at 37.)  A.B. thought the wetness "was probably semen" because she was familiar with how that felt.  (*Id*. at 38.)  A.B. woke Biggs so that he could drive her back to her car at the bar.  A.B. then went to the house of a friend, who convinced her to report the possible crime and go to the hospital.

---

[1] Ind. Code § 35-42-4-1(a)(2) (1998).

[4] Hospital staff used a rape kit to collect samples from A.B.'s external and internal genitalia. Laboratory testing identified the presence of sperm in both samples. The sperm from both samples matched one another and the known standard provided by Biggs at all fifteen of the genetic locations compared. The analyst testified the chance of that happening was only one in eight trillion unrelated persons. A doctor who treated A.B. on December 15, 2013, explained the only way for sperm to be found in the internal sample is for the sperm to be deposited inside the vagina.

[5] On October 12, 2016, the State charged Biggs with Class B felony rape. A jury found Biggs guilty as charged. The trial court imposed a ten-year sentence, with five years suspended and three years of reporting probation.

# Discussion and Decision

[6] Biggs asserts the evidence is insufficient to support his conviction.

> For sufficiency challenges, we neither reweigh evidence nor judge witness credibility. We consider only the evidence most favorable to the judgment together with all reasonable inferences that may be drawn from the evidence. We will affirm the judgment if it is supported by substantial evidence, even if the evidence is conflicting.

*McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018) (internal citations omitted).

[7] As charged against Biggs, Class B felony rape occurs when a person "knowingly or intentionally has sexual intercourse with a member of the

opposite sex when . . . the other person is unaware that the sexual intercourse is occurring . . . ." Ind. Code § 35-42-4-1(a)(2) (1998). For purposes of that statute, "sexual intercourse" is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35-31.5-2-302 (2012). Biggs argues the State failed to prove two of those elements: (1) that his penis penetrated A.B.; and (2) that A.B. was unaware intercourse was occurring. We address each argument separately.

### *Penetration*

[8] Biggs argues there is no proof he penetrated A.B. The "penetration of the female sex organ" required for conviction of rape does not require penetration of the vagina; penetration of the external genitalia, or vulva, is sufficient. *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012), *trans. denied*. Penetration can be "inferred from circumstantial evidence such as the physical condition of the victim soon after the incident." *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009).

[9] A.B. testified that, when she woke up in Biggs' bed, her "underwear was kind of wet and [she] had like a little bit of pain . . . in [her] vagina area." (Tr. Vol. 2 at 37.) A.B. thought the wetness "was probably semen" because she was familiar with how that felt. (*Id.* at 38.) The friend who drove Biggs and A.B. from one bar to the other on the night in question testified that, when he talked to Biggs about what happened with A.B., Biggs gave him the impression that Biggs and A.B. had intercourse. (*See id.* at 81.)

Biggs denies having intercourse with A.B., and he testified he prematurely ejaculated onto A.B. without ever penetrating her. However, the fact that a record contains conflicting evidence is "beside the point," *McCallister*, 91 N.E.3d at 558, and such "arguments misapprehend our limited role as a reviewing court." *Id*. We do not "ask whether the jury might have reached a different result based on the evidence it heard. Our inquiry, rather, is whether record evidence supports the jury's verdict." *Id*. at 559.

Furthermore, the record contains other evidence that contradicts Biggs' explanation of the events. A laboratory technician testified the sample collected from A.B.'s cervix contained sperm that matched Biggs' DNA at all fifteen of the genetic locations compared, and the emergency room doctor who evaluated A.B. explained that sperm released on the outside of a woman's body cannot travel to the cervix. The only way for sperm to reach the cervix is for it to be deposited inside the vagina. That evidence, seen in the light most favorable to the judgment, demonstrates Biggs penetrated A.B.'s sex organ with his sex organ. *See Pasco v. State*, 563 N.E.2d 587, 590 (Ind. 1990) (evidence supported inference of rape where victim's body was found naked with legs spread, defendant's handprint was on thigh, and sperm was found inside vagina).

### *Awareness*

Biggs next asserts the State failed to prove A.B. was "unaware that the sexual intercourse [was] occurring," as is required for a conviction of rape under Indiana Code section 35-42-4-1(a)(2). We have previously explained "the victim does not need to be *unconscious* for the sexual intercourse to constitute

rape." *Filice v. State*, 886 N.E.2d 24, 36 (Ind. Ct. App. 2008) (emphasis added), *trans. denied*. Rather, the victim need only be "unaware" that intercourse is occurring. *Glover v. State*, 760 N.E.2d 1120, 1124 (Ind. Ct. App. 2002), *trans. denied*. "Unaware" means "not aware: lacking knowledge or acquaintance." *Id*. (quoting *Becker v. State*, 703 N.E.2d 696, 698 (Ind. Ct. App. 1998)).

[13] In *Glover*, J.B., a woman who was drinking alcohol at an apartment party with friends, "passed out" in the kitchen. *Id*. at 1125. The apartment's resident carried J.B. to the bedroom, with her feet dragging on the floor, because J.B. was unable to stand unassisted. *Id*. Multiple party guests described her as "mumbling" incoherently. *Id*. Glover entered the bedroom and had sex with J.B. *Id*. at 1123. Soon thereafter, J.B. was so unresponsive that she was taken to a hospital, where a doctor described her as "unconscious due to severe intoxication." *Id.* at 1125. Glover claimed he and J.B. had consensual sexual relations. The Court held the evidence of J.B.'s condition was sufficient for a jury to determine J.B. had been unaware she was having intercourse with Glover, such that his conviction of rape was valid. *Id*. The court also held "the language of the Rape statute may be fairly construed as adequate to inform an individual of ordinary intelligence that sexual intercourse with an individual who has lost consciousness due to inebriation is proscribed." *Id*. at 1124.

[14] Here, A.B. testified the last thing she remembered from that night of drinking was fighting with Biggs in the parking lot because she did not want to get in his car with him. Biggs admitted he and A.B. argued about her being too drunk to drive, and he confirmed A.B. "passed out" in his car on the way to his house.

(Tr. Vol. 3 at 158.)  He also testified that, when they arrived at his house, A.B. "stumbled her way inside and followed me downstairs and laid herself on the bed." (*Id.* at 140.)  To get down the stairs, A.B. held onto both the handrail and Biggs.  When they were in his bedroom, A.B. was unable to give Biggs the passcode for her phone.  The next thing A.B. remembers is the morning, when she woke in Biggs' bed covered in vomit.  While A.B. was not as intoxicated as the woman in *Glover*, this evidence was sufficient for the jury to determine A.B. had been "unaware" when sexual intercourse occurred.  *See*, *e.g.*, *Filice*, 886 N.E.2d at 36 (victim needed to be "unaware," not "unconscious," such that jury could find woman impaired by Rohypnol had been unaware that intercourse was occurring).

# Conclusion

The State presented sufficient evidence to demonstrate that Biggs penetrated A.B.'s sex organ with his sex organ and that A.B. was unaware that the sexual intercourse was occurring when it occurred.  We accordingly affirm Biggs' conviction of Class B felony rape.

Affirmed.

Riley, J., and Mathias, J., concur.