## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 02 2018, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eugene C. Tschopp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 2, 2018

Court of Appeals Case No.
18A-CR-287

Appeal from the La Porte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1705-F1-417

**Bailey, Judge.**

# Case Summary

[1] Eugene C. Tschopp ("Tschopp") appeals his convictions, following a jury trial, for two counts of child molesting as Level 1 felonies;[1] two counts of child molesting as Level 4 felonies;[2] incest as a Level 4 felony;[3] and criminal confinement as a Level 5 felony.[4] We affirm.

# Issues

[2] Tschopp raises the following two issues on appeal:

    I.    Whether he received ineffective assistance of trial counsel.

    II.    Whether the State presented sufficient evidence to support his conviction for criminal confinement.

# Facts and Procedural History

[3] In December 2016, J.T. was thirteen years old and lived with her father, Christopher Tschopp ("Father"), step-mother, Tschopp, her sister, her brother, and one of her step-brothers, C.J. Tschopp is J.T.'s paternal uncle. J.T. shared a bedroom on the second floor of the home with her younger sister, I.T. The

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-46-1-3.

[4] I.C. § 35-42-(b)(1).

two sisters had bunk beds and J.T. would frequently sleep in the bottom bed with I.T. because of nightmares.

[4] In January 2017, J.T. and I.T. informed Father that Tschopp had molested them. Father and his wife reported the accusations to the authorities and, on May 10, 2017, the State charged Tschopp with two counts of child molesting, as Level 1 felonies; three counts of child molesting, as Level 4 felonies; incest, as a Level 4 felony; and criminal confinement, as a Level 5 felony. A jury trial began on October 23, 2017.

[5] At trial, J.T. testified in detail about eight separate instances that occurred during the winter of 2016-2017, in which Tschopp had sexual intercourse with, and/or sexually assaulted, J.T. in her home. J.T. described the times, places, and events of each occurrence in some detail. She testified that on at least four of these occasions, Tschopp entered her room during the night, woke her up, and either sexually assaulted her there or else had her follow him downstairs where he sexually assaulted her. J.T. testified that Tschopp molested her by touching her vagina and breasts and by penetrating her vagina with both his fingers and penis. She testified that on the last occasion, Tschopp bit J.T. on her arm when he was attempting to wake her but she was moving around. The bite left a mark on J.T.'s arm. On cross-examination of J.T., Tschopp's lawyer asked her about the large number of people in the house, whether C.J. was sometimes in her bedroom, and her father's rule that C.J. was not supposed to be in J.T.'s bedroom.

[6]     I.T. also testified at Tschopp's trial.  I.T. testified about one instance in which Tschopp grabbed I.T., pulled her onto his cot in the living room, and rubbed her "butt" with his hand "in a circular motion."  Tr. Vol. II at 100.  I.T. also testified about two separate occasions when she witnessed Tschopp sexually assault J.T.  I.T. testified that, on more than one occasion, she witnessed Tschopp enter her and J.T.'s bedroom while the girls were in bed and place either a basket or a chair up against the bedroom door to keep the door closed.  I.T. testified that, on those occasions, Tschopp tried to wake up J.T.  I.T. said she eventually convinced J.T. to tell their father about the molesting.  J.T. informed her father of the molesting by writing it in notes because she was "scared" to tell him in person.  *Id*. at 169.  On cross-examination, Tschopp's counsel asked I.T. about where the other males in the house slept.  I.T. testified that there was a house rule that "people were not allowed in each other's room because [two of the boys] got into a fight."  *Id*. at 113.  Tschopp's counsel also brought out testimony that I.T.'s nightmares sometimes cause her to imagine things.

[7]     Father testified that J.T. had become more withdrawn and "moody" around Christmas 2016, and that he first learned about J.T.'s and I.T.'s allegations about Tschopp when they informed him through hand-written notes.  *Id*. at 211.  Father testified that he confronted Tschopp about the allegations, and Tschopp became angry and left the house that day.  Father's wife, "Donica," testified that she contacted the police.  Donica testified that J.T. had become more secluded and began layering her clothes around Christmas of 2016.  She

testified that, on the day she called the police, she saw a mark on J.T.'s arm and J.T. told Donica that Tschopp had bitten her. On cross-examination, Donica testified that the boys in the house understood the house rule that they must knock before entering someone else's bedroom.

[8] Deputy Jon Samuelson of the LaPorte County Sheriff's Department testified that, on January 12, 2017, he responded to a report from Donica that her step-children had been inappropriately touched by their uncle. On cross-examination, Tschopp's lawyer raised questions about the Deputy's memory.

[9] In his brief closing argument to the jury, Tschopp's lawyer pointed out that there was no physical evidence or other eyewitnesses to corroborate J.T.'s and I.T.'s testimony that Tschopp molested them. He also pointed out that there were "a number of people" living in the household but no one other than the girls witnessed the alleged molestation. Tr. Vol. III at 78.

[10] The jury found Tschopp guilty of both Level 1 felony child molesting counts, two Level 4 felony child molesting counts, incest, and criminal confinement. The jury found Tschopp not guilty of one count on Level 4 felony child molesting.[5] At Tschopp's sentencing hearing, the trial court noted that Tschopp was represented "by trial counsel with many years of jury trial experience in criminal cases. And[,] despite a closing argument of approximately one minute

---

[5] Tschopp was found not guilty of the child molestation charge related to I.T. He was found guilty as to all charges relating to J.T.

in length, the Defendant was represented by competent counsel and received the effective assistance of counsel throughout this trial." *Id*. at 122. The trial court sentenced Tschopp to an aggregate sentence of sixty years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## Ineffective Assistance of Trial Counsel

[11] Tschopp asserts that his trial counsel was ineffective for failing to sufficiently cross-examine the witnesses against him and for failing to provide a sufficient closing argument.[6] As the Indiana Supreme Court has observed, we

> review claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id*. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id*. at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id*. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id*. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. 2052. A reasonable

---

[6] Because he raises a record-based claim of ineffective assistance of trial counsel, Tschopp properly raises the claim on direct appeal. *See Woods v. State*, 701 N.E.2d 1208, 1211-12 (Ind. 1998).

probability is a probability sufficient to undermine confidence in the outcome. *Id*.

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002).

[12] We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011); *see also Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998) (noting the reviewing court "will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best"). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz*, 766 N.E.2d at 361. And if a claim of ineffective assistance of counsel can be disposed of by analyzing the prejudice prong alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[13] It is well-settled that the nature and extent of cross-examination is a matter of strategy delegated to trial counsel. *Waldron v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997) (citing *Osborne v. State*, 481 N.E.2d 376, 380 (Ind. 1985)), *trans. denied*. Similarly, "[t]he crafting and delivery of final argument are matters of strategy on which counsel is entitled to the presumption of competency." *Coleman v. State*, 694 N.E.2d 269, 275 (Ind. 1998). "Typically, when reviewing a claim of ineffective assistance, the first step is to examine counsel's performance to determine whether it was outside the wide range of professionally competent assistance." *Waldron*, 684 N.E.2d at 208. However,

here, we need not engage in the first step of the *Strickland* analysis[7] as Tschopp has clearly failed to establish the second step, i.e., that counsel's alleged deficient performance prejudiced his case. *Id.*

[14]    To show prejudice, Tschopp must show a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different. However, there was sufficient evidence to support Tschopp's child molesting and incest convictions,[8] even assuming his counsel's cross-examinations and closing statement were deficient. "To sustain a conviction for child molesting or incest, proof of the 'slightest penetration' of the female sex organ … is sufficient," and penetration may be "inferred from circumstantial evidence." *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012) (quoting *Dinger v. State*, 540 N.E.2d 587, 590 (Ind. 1990)), *trans. denied*. Moreover, a molested child's uncorroborated testimony is sufficient to sustain a conviction for molesting. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Here, J.T. testified in detail about each of eight separate incidents of molestation by Tschopp, including penetration, and her testimony was corroborated in large part by I.T.'s testimony. The girls' testimony was sufficient to support the

---

[7] However, we note that defense counsel's trial strategy appeared to be to emphasize mistaken identity. In his response to the State's motion in limine to limit questions about a possible incident between J.T. and C.J., defense counsel stated that there was "an issue of identity," given the other people living in the house, and he argued for a "right to present evidence that someone other than the Defendant is responsible for these allegations." Tr. Vol. II at 8. A defense strategy of mistaken identity was not below an objective standard of reasonableness, and defense counsel's cross-examinations and closing argument were consistent with that strategy. Therefore, we note, without deciding, that Tschopp's ineffective assistance claim would apparently also fail on the first step of the *Strickland* analysis.

[8] We address the sufficiency of the evidence to support the criminal confinement conviction below.

molestation and incest convictions. Thus, Tschopp has failed to show that the outcome of his trial would probably have been different if Tschopp's counsel had not allegedly performed deficiently in his cross-examinations and closing statement. *Wentz*, 766 N.E.2d at 360.

## Sufficiency of the Evidence

[15] Tschopp challenges the sufficiency of the evidence to support his conviction for criminal confinement. Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

[16] To support Tschopp's conviction for criminal confinement, as a Level 5 felony, the State had to prove: (1) Tschopp; (2) knowingly or intentionally; (3) confined J.T. and/or I.T. without their consent; (4) and J.T. and/or I.T. were less than fourteen years old. I.C. § 35-42-3-3(b). Tschopp does not challenge the fact that J.T. and I.T. were less than fourteen years old. However, he alleges there was insufficient evidence that he knowingly confined them without

their consent.  "The offense of confinement requires proof of a substantial interference with a person's liberty without the person's consent." *Cunningham v. State*, 870 N.E.2d 552, 553 (Ind. Ct. App. 2007) (quotation and citation omitted).  And conviction for confinement may be proper where there is evidence that the confinement was "more extensive than necessary to commit the main offense." *Kelley v. State*, 2 N.E.3d 777, 787 (Ind. Ct. App. 2014).

[17]  Tschopp notes that the only evidence of confinement is I.T.'s testimony that, more than once, Tschopp came into her bedroom to wake up J.T. and closed their bedroom door by placing a basket or chair in front of it.  However, that evidence that Tschopp barricaded the way out of the bedroom is sufficient evidence that Tschopp confined I.T. and J.T.  That evidence established that the confinement was more extensive than necessary to commit the crimes of child molestation and incest.  Moreover, "criminal confinement of a child may be proven by the child's uncorroborated testimony alone "if the jury finds that said testimony establishes the guilt of the defendant beyond a reasonable doubt." *Hicks v. State*, 631 N.E.2d 499, 502 (Ind. Ct. App. 1994), *trans. denied*.  Clearly, the jury found I.T.'s testimony credible and sufficient to show guilt beyond a reasonable doubt.  We will not reweigh that evidence, as Tschopp requests.  *Bailey*, 907 N.E.2d at 1005.

# Conclusion

[18]  Tschopp has failed to show that the outcome of his trial would probably have been any different if his trial counsel had not allegedly performed deficiently in

cross-examinations and closing argument. And the State presented sufficient evidence to support Tshopp's conviction for criminal confinement as a Class 5 felony.

[19] Affirmed.

Mathias, J., and Bradford, J., concur.