**Ronald THOMPSON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 02S00–9507–CR–849.

Supreme Court of Indiana.

Dec. 26, 1996.

Quinton L. Ellis, Fort Wayne, for Appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for Appellee.

1. Ind.Code § 35–43–1–4 (1993).

2. Ind.Code § 35–42–4–1 (1993).

3. Ind.Code § 35–42–4–2 (1993).

SULLIVAN, Justice.

Defendant Ronald L. Thompson was convicted of Burglary,[1] Rape[2] and Criminal Deviate Conduct.[3] He was also adjudicated a habitual offender.[4] This court has jurisdiction over this direct appeal because the longest single sentence imposed was greater than fifty years.[5]

*Background*

At defendant's trial for burglary, rape, and criminal deviate conduct, the only evidence that the alleged sexual assault occurred came from the victim's testimony. The victim testified that she was sleeping on her living room couch in the pre-dawn hours of December 20, 1993, when she was awakened by the sound of an intruder coming toward her. Identifying the intruder as the defendant, the victim described what he was wearing and testified that he was not wearing a mask or any other covering on his face. She then testified that the defendant got on top of her and began choking her; that a struggle ensued; and that she ultimately lost consciousness. Her answers to the prosecutor continued:

A: I came back to and we were lying on the ground at that time right by the couch and I reached up, because I had a glass candle up there and I reached up and grabbed it and I grabbed a Taco Bell cup instead and I hit him with it and so he choked me again because it just ... pop just went everywhere you know, it was plastic and then he was trying to force his penis in me but it wouldn't go all the way in because I guess from the struggle that we had he did not have an erection at the time so that was about two minutes I guess and then I reached up and grabbed ... the third time I went for something I grabbed a glass hand blown candle thing that was in the same place where the Taco Bell cup was and I was pretending like I was

4. Ind.Code § 35–50–2–8 (1993).

5. Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7).

dead because he had choked me again, and when I reached up to grab it, he drilled me on the face, but I held onto the glass thing and then I cracked him over the head with it and he ran out my front door.

R. 184 (ellipses in original). A series of brief questions and answers followed and then this colloquy occurred:

Q: [Victim's name], you also testified that he tried to force his penis into you. Where did he try to force that?

A: When we was on the ground ... it was after the Taco Bell cup incident, because he could not get his penis in, he was using his fingers and when he was trying to put ... you know, when he was trying to force his penis in me I thought if he rapes me then I'm going to be dead, he's going to break my neck, so that's when I hit him with the cup ... I mean the glass thing because I thought ... I just thought he was going to break my neck in two and I wouldn't be here no more.

Q: So he used his fingers on you?

A: Yes.

Q: Do you know [victim's name] if he ejaculated or not?

A: No. he didn't.

R. 185–186 (ellipses in original). Later, at the very end of direct examination, the following colloquy occurred:

Q: [Victim's name], how far did he push his penis inside you?

Defense counsel: I'm going to object Judge. I think that's a leading question.

Q: Your Honor, this is a very sensitive matter. I think the State is entitled to a little leeway with extremely uncomfortable testimony with a witness who is obviously uncomfortable and nervous.

Court: She's already testified about the intent. I'll overrule the objection.

A: I can say?

Q: Yes ma'am.

A: He had about that much of his penis in me and he was trying to put more in but it wouldn't go because ... I guess because of the struggle that we had fought that he didn't have an erection so it wouldn't go all the way in but he was trying to make it go in because he didn't have an erection.

Q: Thank you, [victim's name].

R. 212–213 (ellipses in original).

We will recite additional facts as required.

After trial, a jury found defendant guilty of Burglary as a class A felony, Rape as a class B felony, and Criminal Deviate Conduct as a class B felony. The jury also found the defendant to be a habitual offender. The trial court sentenced defendant to consecutive sentences of 45 years for Burglary and 20 years for Criminal Deviate Conduct. This term was increased by an additional 30 years pursuant to the habitual offender enhancement. The trial court found that the rape conviction merged with the burglary conviction as a matter of law.

I

Defendant contends that the trial court committed reversible error in three respects concerning the victim's testimony.

A

As indicated above, at the very end of direct examination of the victim by the state, the prosecutor asked the victim, "[H]ow far did he push his penis inside you?" Defendant contends that the trial court committed reversible error by overruling his objection that the question was improperly leading.

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony. Ind.Evidence Rule 611(c). While the purpose of this rule is to prevent the substitution of the language of the attorney for the thoughts of the witness as to material facts in dispute, *Webster v. State*, 206 Ind. 431, 436, 190 N.E. 52, 54 (1934), the use in the rule of the term "should" indicates that the use of leading questions on direct examination rests within the trial court's discretion. *Garrison v. State*, 589 N.E.2d 1156, 1158 (Ind.1992); *Webster*, 206 Ind. at 436, 190 N.E. at 54. *See* Robert Lowell Miller,

Jr., *Indiana Evidence*, 13 Indiana Practice § 611.302.

Earlier in her testimony, the victim said, "[H]e was trying to force his penis in me but it wouldn't go all the way in . . ." R. 184. We believe that logic dictates that if "it wouldn't go all the way in," the victim must be considered to have testified that at least some penetration had occurred. Viewed in this way, the prosecutor's subsequent question, "[H]ow far did he push his penis inside you," was not so much a leading question as a request for further explanation of the victim's earlier answer. In any event, we note that the victim's answer to the arguably leading question, "He had about that much of his penis in me and he was trying to put more in . . .," was almost the same as her earlier statement. In *Webster*, we found any error in permitting leading questions was harmless because "previous questions had been asked and answered without objection covering the substance of the answers given to the questions objected to." *Webster*, 206 Ind. at 435, 190 N.E. at 54. To the extent the question was leading, we find the same situation obtains here.

### B

■ Defendant contends that the trial court committed reversible error in sustaining the state's hearsay objections during defendant's cross-examination of the victim. We find no error.

The state had objected on hearsay grounds to defense counsel's questioning of the victim concerning the victim's conversation with a nurse at the hospital to which she had been taken following the attack. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801. It is very clear from the record that the basis of the prosecutor's objection was that any testimony by the victim as to what the nurse had said would be inadmissible hearsay. This was clearly correct and the trial court properly sustained the objection. It does appear from our reading of the record that defense counsel was not seeking to elicit any information about what the nurse had said but was

seeking to establish that what the victim had told the nurse was inconsistent with the victim's trial testimony. But the state did not object on the basis that the victim's prior statements were hearsay and the defendant's ability to question the victim about the prior statements to the nurse, while interrupted and perhaps disrupted by the objections, was not restricted.

### C

■ Defendant contends that the trial court committed reversible error in sustaining the state's foundation objections during defendant's cross-examination of the victim. Again, we find no error.

Two different police officers, DiFilippo and Morales, took statements from the victim immediately following the attack. As defense counsel began to cross-examine the victim as to what she told the investigating officers, the prosecutor objected on grounds that defense counsel had not laid an adequate foundation as to which officer's questioning defense counsel was asking about. The trial court sustained the objection. As questioning continued, the prosecutor's objection shifted to a contention that defense counsel was misrepresenting information contained in the police reports. After some discussion at the bench, the trial court told defense counsel, "What you need to do is ask her for a description [of what she told the investigating officers] and then call DiFilippo and Morales . . . and if it's different than that then you've got your inconsistency. But you can't put words in her mouth with facts that are not in evidence." The cross-examination on this aspect of the case then proceeded uninterrupted.

On appeal, defendant cites Evid.R. 613(a) which provides, "In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel." Our reading of the record does not suggest that this rule was violated. Defense counsel was not required to show the victim the police reports but only make it clear which police officer's question-

ing he was asking the victim about. Once again we find that, while the prosecutor's objections interrupted and perhaps disrupted defense counsel's line of questioning, it was not restricted to any significant extent.

## II

Defendant also contests the sufficiency of the evidence supporting the convictions for rape and criminal deviate conduct.

## A

■ Defendant argues that the state failed to produce sufficient evidence that he was the assailant. The identification evidence offered at trial was two-fold. First, the victim identified the defendant as her attacker in court. Second, on January 2, 1994, several weeks after the December 20, 1993, attack, the victim picked the defendant out of a photograph array prepared by the police. This was sufficient evidence of identification.

## B

■ Defendant also contests the sufficiency of the evidence supporting the element of penetration in both the rape and criminal deviate conduct convictions. To prove the crime of rape, the state was required to prove beyond a reasonable doubt, *inter alia,* that the defendant had sexual intercourse with the victim. Ind.Code § 35–42–4–1. The legislature has defined "sexual intercourse" as "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35–41–1–26. The statute does not require that the vagina be penetrated, only that the female sex organ be penetrated. *Short v. State,* 564 N.E.2d 553, 559 (Ind.Ct.App.1991) (collecting cases from other jurisdictions). The legislative his-

tory of our criminal code also emphasizes this rule. Indiana Crim. L. Study Comm. Comments to Ind.Code § 35–42–4–1 at 412 (West 1978) (statute "codifies the typical definition of sexual intercourse meaning the slightest penetration of the female sex organ by the male sex organ").[6]

■ Defendant argues that there is no circumstantial evidence that rape occurred and that the victim's testimony as to penetration was "uncertain." But a rape conviction may rest solely upon the uncorroborated testimony of the victim, *Wooden v. State,* 657 N.E.2d 109, 111 (Ind.1995); *Rohm v. State,* 558 N.E.2d 1100, 1103 (Ind.1990), and we have reviewed earlier in this opinion testimony of the victim from which a jury could infer beyond a reasonable doubt that penetration necessary to support the rape conviction occurred.

■ We do agree with the defendant, however, that the record does not include sufficient evidence of penetration necessary to support the criminal deviate conduct conviction. To prove the crime of criminal deviate conduct, the state was required to prove beyond a reasonable doubt, *inter alia,* that the defendant penetrated the sex organ of the victim with his fingers. Ind.Code § 35–42–4–2 and 35–41–1–9. The only references to the defendant's use of his fingers were when the victim testified, "[B]ecause he could not get his penis in, he was using his fingers . . . ," and when she answered, "[Y]es," to the prosecutor's follow-up question, "So he used his fingers on you?" This testimony indicates to us that the defendant was using his fingers to assist in the rape; this did not constitute a separate act of criminal conduct.

---

6. The Commentaries to the Model Penal Code contain the following helpful discussion:

> The chief issue in defining the act that may constitute rape is whether to require something more than "slight penetration" of outer genitalia. It was settled at the time the Model Code was drafted that the crime was complete without male orgasm or penetration of penis into vagina. Statutes in effect at the time commonly provided that "any penetration, however slight," was sufficient. . . .
>
> . . . The Model Code . . . adheres to the "slight penetration" rule, as have all recently

revised codes that have addressed the issue. The essential interests protected by the law of rape—the female's freedom of choice and immunity from unwanted intimacy—are fully implicated even where complete penetration is not accomplished. It seems clear that testimony about how much penetration occurred, rather than whether there was any penetration at all, would be misplaced in terms of measuring the injury to the victim or the dangerousness of the actor.

Model Penal Code & Commentaries § 213.1 at 347–348 (1980).

There was insufficient evidence to support the conviction for criminal deviate conduct.

### Conclusion

The trial court is affirmed except that the conviction and sentence for criminal deviate conduct is reversed.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur.

SELBY, J., concurs in part and dissents in part with separate opinion.

SELBY, Justice, concurs in part and dissents in part.

I would affirm the trial court in all respects. There was sufficient evidence from which the jury could infer that the defendant, unsuccessful in his attempt to insert his penis completely, inserted his fingers into the victim's vagina.