## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 07 2015, 10:01 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffrey E. Kimmell
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Griffin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 7, 2015<br><br>Court of Appeals Case No.<br>71A03-1504-CR-144<br><br>Appeal from the St. Joseph Superior<br><br>The Honorable Jane Woodward Miller, Judge<br><br>Trial Court Cause No.<br>71D01-1404-MR-4 |

**Najam, Judge.**

# Statement of the Case

Robert Griffin appeals his conviction for murder, a felony, following a jury trial. Griffin raises two issues for our review, which we restate as the following four issues:

1. Whether the State presented sufficient evidence to show that Griffin intended to kill L.B.

2. Whether the trial court abused its discretion when it permitted the State to ask a leading question to a witness during direct examination.

3. Whether the prosecutor committed misconduct during his closing statements.

4. Whether the trial court abused its discretion when it permitted the State to call a rebuttal witness for the sole purpose of impeaching statements presented to the jury during Griffin's defense.

We affirm.

# Facts and Procedural History

On April 8, 2014, L.B. and M.B., both juveniles, were involved in a fistfight at Perley Park in South Bend. They again confronted each other at the same place the next day, except this time M.B. was accompanied by several other juveniles, including Griffin, Ty.B., Ta.B., D.W., J.H., and C.W. Griffin carried a .38 caliber revolver. Another of the cohort carried a 9 mm handgun. L.B. handed his cellphone to one of the other juveniles in anticipation of the fight, but that

juvenile threw L.B.'s cellphone onto the ground, breaking it. Griffin then pulled out his revolver and fired at L.B. But Griffin missed L.B., who then fled the scene, and instead hit two-year-old J.S., who was playing in the park about 400 yards away. The juvenile with the 9 mm handgun also fired shots toward L.B. and missed. As the other juveniles fled, Griffin collected the shell casings from his revolver and gave them and the gun to C.W. C.W. placed the shell casings in one of his pockets and gave the revolver to D.W. J.S. died at the scene.

[4] Thereafter, officers searched D.W.'s residence, where they recovered .38 caliber ammunition along with an empty revolver box. Occupants of that residence informed the officers that another individual, J.W., was in possession of the revolver.[1] As such, the officers searched J.W.'s residence, in which they found a revolver that matched both the description of the revolver fired at Perley Park on April 9 and the serial number on the empty box at D.W.'s residence. A few days later, during a traffic stop at Perley Park, officers discovered .38 caliber shell casings in C.W.'s pocket.

[5] J.S.'s autopsy confirmed that he had died from a gunshot wound caused by a .38 caliber revolver in which the bullet had "lost a significant amount" of its original velocity at the moment of impact. Tr. at 104. Later forensic testing confirmed that the revolver found at J.W.'s residence was the same revolver that had fired the shell casings discovered in C.W.'s pocket.

---

[1] It is apparent from the record that D.W. and J.W. were related but lived at different residences. Tr. at 283.

[6] A.G., a twelve-year-old at the park at the time of the shooting, identified one of the shooters as wearing a white do-rag. A.G. and L.B. later identified Griffin from a photo array as a participant in the shooting. During a subsequent interview with the police, Griffin admitted he was wearing a white do-rag at the time of the shooting.

[7] On April 17, 2014, the State charged Griffin with murder, a felony, and attempted murder, a Class A felony. At Griffin's ensuing jury trial, Quintin Ferguson testified that he was in jail with Griffin while Griffin was awaiting his jury trial. Ferguson testified that Griffin had told him, "I think I might have shot the baby on accident . . . ." *Id.* at 471. Rashu Smith also testified that he was in jail with Griffin and that Griffin had told him that Griffin had shot a revolver and "maybe one of those bullets might have been the bullet that hit the baby." *Id.* at 485.

[8] Following the close of the State's case-in-chief, Griffin called four witnesses. Three of Griffin's witnesses testified that Ty.B. told them that he had shot J.S. The fourth witness testified that Ty.B. did not tell him that. In response to Griffin's witnesses, the trial court permitted the State, over Griffin's objection, to call St. Joseph's Sheriff's Department Officer Brian Cook as a rebuttal witness for the sole purpose of impeaching the alleged statements by Ty.B. Officer Cook testified that, during an interview with the officer, Ty.B. had stated that he did not shoot the gun that killed J.S. And, during its closing argument, the State noted that Ty.B. had not appeared at trial to take "credit for

this . . . did he?  He didn't come here and raise his right hand."  *Id.* at 796.

Griffin objected to those statements, but the court overruled his objection.

[9] The jury found Griffin guilty as charged.  The trial court entered judgment of conviction for murder, a felony, and sentenced Griffin accordingly.[2]  This appeal ensued.

## Discussion and Decision

### *Issue One:  Sufficiency of the Evidence*

[10] The State's theory underlying its allegation that Griffin had murdered J.S. was that Griffin had intended to murder L.B., missed, and instead killed J.S.  Thus, the State prosecuted Griffin for J.S.'s death under a theory of transferred intent.  *See White v. State*, 638 N.E.2d 785, 786 (Ind. 1994).  On appeal, Griffin first argues that the State failed to present sufficient evidence that he had acted with the necessary intent to kill L.B. and, therefore, he had no intent to transfer to J.S.'s death.  Our standard for reviewing the sufficiency of the evidence needed to support a criminal conviction is as follows:

> First, we neither reweigh the evidence nor judge the credibility of witnesses.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).  Second, we only consider "the evidence supporting the judgment and any reasonable inferences that can be drawn from such

---

[2] Citing double jeopardy concerns, the trial court did not enter judgment of conviction against Griffin on the jury's verdict that he had committed attempted murder of L.B.  The trial court was correct in that analysis.  Where, as here, the State prosecutes a defendant under a theory of transferred intent, the attempted crime towards the intended victim is a lesser included offense of the completed crime that befalls the unintended victim, at least when the intended victim goes unharmed.  *See, e.g.*, *Ledesma v. State*, 761 N.E.2d 896, 899 (Ind. Ct. App. 2002) (citing the predecessor to Indiana Code Section 35-31.5-2-168(2) (2012)).

evidence." *Id.* (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). A conviction will be affirmed if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* "It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling." *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005) (citations omitted).

*Willis v. State*, 27 N.E.3d 1065, 1066-67 (Ind. 2015). And to prove that Griffin committed murder, the State had to show that Griffin knowingly or intentionally killed another human being. Ind. Code § 35-42-1-1(1) (2012).

[11] Griffin asserts that the State failed to present sufficient evidence that he intended to kill L.B. In particular, he asserts: that the bullet that struck J.S. was smaller than the barrel of the gun that fired it,[3] which would have caused the bullet to travel more slowly than a well-fitting bullet; that, given their heights and respective distances, Griffin would have had to fire the gun at an angle well above L.B.'s head to hit J.S. nearly 400 yards away given the bullet's dynamics; and, in light of those dynamics, it is "an unreasonable inference" to conclude that such evidence displays an intent to kill.[4] Appellant's Br. at 10-11.

---

[3] Although not relevant to our disposition of this issue, there is no evidence in the record to support this assertion.

[4] We acknowledge the State's assertion that Griffin's arguments were not made to the jury with admissible evidence and that we should "summarily refuse to consider the mathematic assertions of counsel as credible

[12] But Griffin's assessment of the record omits evidence that was properly before the jury. For example, L.B. testified—as did several others—during his direct examination that, before the fight began, Griffin "pulled the gun out, and he shot it." Tr. at 250. And, contrary to Griffin's analysis on appeal, L.B. was explicit about Griffin's aim:

> Q.     Did you see where he [Griffin] was holding the gun, where he was aiming?
>
> A.     At me, I guess.
>
> Q.     I mean you say, you guess. Was it up in the air? Was it down to the ground? Was it at you?
>
> A.     At me.

*Id.* The jury was free to credit this testimony over Griffin's assessment of the bullet's trajectory, and there is no doubt that the jury is free to find an intent to kill from such evidence. *E.g.*, *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

[13] Griffin's argument on the sufficiency of the State's evidence focuses exclusively on his intent to kill L.B., and, thus, we do not consider whether the State presented sufficient evidence to show the additional step that Griffin was the person responsible for J.S.'s death. *See, e.g.*, *Barrett v. State*, 837 N.E.2d 1022, 1030 (Ind. Ct. App. 2005), *trans. denied*. Hence, we affirm Griffin's conviction for murder.

---

evidence on appeal." Appellee's Br. at 17. In light of the evidence properly before the jury, however, we simply address Griffin's argument on the merits.

## Issue Two: Smith's Testimony

Griffin next asserts that the trial court abused its discretion when it allowed the State to ask Smith the following purportedly leading question:

> Q.     Did the defendant make a statement to you that he had chased after the guy, he was trying to kill that n****r?
>
> * * *
>
> A.     He said, yeah.  He said shots had fired out.  He started chasing the guy, shooting at him.  Yeah, he said he was trying to hit him.

Tr. at 485-86.  We review the trial court's decision to admit evidence for an abuse of discretion, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it.  *Jacobs v. State*, 22 N.E.3d 1286, 1288 (Ind. 2015).

We agree with Griffin that the question was a leading question.  "A leading question is one that suggests to the witness the answer desired."  *Williams v. State*, 733 N.E.2d 919, 922 (Ind. 2000).  Here, the question asked plainly suggested to Smith the answer the State desired.

But this alone does not demonstrate error.  Leading questions "should not be used on direct examination *except as necessary to develop the witness's testimony*."  Ind. Evidence Rule 611(c) (emphasis added).  "[T]he use in the rule of the term 'should' indicates that the use of leading questions on direct examination rests

with the trial court's discretion." *Thompson v. State*, 674 N.E.2d 1307, 1310 (Ind. 1996).

[17] Here, it is clear from a review of the totality of Smith's direct examination that the State asked the above question to develop Smith's testimony. The State had repeatedly, through open-ended questions, asked Smith to describe Griffin's statements to him about the shooting prior to the above question. *See* Tr. at 484-85 ("What did he [Griffin] say?"; "What did Mr. Griffin tell you when he told you about this case?"; "What did he say he did after he drew that weapon?"; "Did he say anything else about what happened after the shooting?"; "Did the defendant tell you anything else about the case?"). Yet none of those questions resulted in Smith fully explaining Griffin's statements. As such, the State bluntly asked the leading question to develop Smith's testimony. Indeed, Griffin's first objection to the question was not on the basis that it was leading but on the grounds that it had been asked and answered. *Id.* at 486. Considering Smith's direct examination in its full context, we cannot say that the trial court abused its discretion when it permitted the State to ask the question.

### Issue Three: Closing Argument by the State

[18] Griffin next asserts that the prosecutor committed misconduct during closing argument when the prosecutor argued that Ty.B. had not appeared at trial to take "credit for this . . . did he? He didn't come here and raise his right hand." *Id.* at 796. It is undisputed that Ty.B. did not testify because he had exercised his Fifth Amendment right to be free from self-incrimination.

[19]     As the Indiana Supreme Court has explained:

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006), *quoted in Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Mahla v. State*, 496 N.E.2d 568, 572 (Ind. 1986). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct."

*Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (emphases in original).[5]

[20]     During his defense, Griffin, who knew Ty.B. would not be available to testify, called four witnesses, three of whom testified that Ty.B. had admitted to them that he had shot J.S. The State then called Officer Cook as a rebuttal witness, and he impeached Griffin's witnesses' recollections of Ty.B.'s statements when he testified that Ty.B. had disavowed responsibility for J.S.'s death. And, in his closing statement, Griffin's counsel relied on the testimony of the three

---

[5] We acknowledge the State's argument that Griffin might have waived this argument for various reasons. Nonetheless, we decide this issue on the merits, with the exception of Griffin's arguments that the State should have granted immunity to Ty.B. in exchange for his testimony. That argument is not supported by cogent reasoning and is waived. Ind. Appellate Rule 46(A)(8)(a).

witnesses he had called who had implicated Ty.B., asserting that Ty.B. "said several times, I'm [the] one who shot him."  Tr. at 786.

[21]    As such, the prosecutor did not commit misconduct because Griffin opened the door to the prosecutor's statement that Ty.B. had not personally appeared and testified that he accepted responsibility for J.S.'s death.  Whether Ty.B. did or did not accept responsibility for J.S.'s death was an issue placed before the jury by Griffin, and the prosecutor was permitted to respond to the defense's arguments.  *Denes v. State*, 508 N.E.2d 6, 11 (Ind. 1987).  In other words, Griffin cannot have it both ways.  He cannot use the fact that Ty.B. was unavailable both to bolster his defense and to call into question the State's rebuttal.

[22]    Moreover, the probable persuasive effect of the prosecutor's comment on the jury's decision was negligible.  A reasonable juror likely would not have thought twice about the fact that Ty.B. did not testify that he had shot and killed J.S.  And, as the State correctly notes on appeal, the prosecutor's comment "comprised four lines in a six-day trial" with "over 800 pages of transcript."  Appellee's Br. at 31.  Hence, Griffin cannot demonstrate error, let alone reversible error.  *Cf. Ryan*, 9 N.E.3d at 672 (holding that "a single instance of prosecutorial misconduct" on the facts of that case did not have "an undeniable and substantial effect on the jury's decision").

### *Issue Four:  Impeachment Testimony*

[23]    Last, Griffin complains that the trial court abused its discretion when it permitted the State to call Officer Cook as a rebuttal witness for the sole

purpose of impeaching the alleged statements by Ty.B. to three of Griffin's four witnesses.[6]  But, as explained above, Griffin opened the door to the State's evidence and closing argument on this issue.  *See Cameron v. State*, 22 N.E.3d 588, 592-93 (Ind. Ct. App. 2014) (observing that otherwise inadmissible evidence may become admissible where the defendant opens the door to questioning on that evidence).  We reject Griffin's argument.

### *Conclusion*

In sum, we affirm Griffin's conviction for murder, a felony.

Affirmed.

Kirsch, J., and Barnes, J., concur.

---

[6] Griffin's argument on this issue is particularly difficult to discern.  Insofar as he argues that a hearsay rule should have applied to Officer Cook's testimony, that argument is not supported by cogent reasoning and is waived.  App. R. 46(A)(8)(a).