## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Trampas A. Whalin
Christopher J. Evans
Adler Tesnar & Whalin
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lisa L. Colbert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 21, 2018

Court of Appeals Case No.
18A-CR-234

Appeal from the Hamilton
Superior Court

The Honorable Jonathan M.
Brown, Judge

Trial Court Cause No.
29D02-1608-FA-6468

**Pyle, Judge.**

# Statement of the Case

Lisa Colbert ("Colbert") appeals her convictions by jury and the sentence imposed thereon. Colbert raises several issues on appeal, which we summarize as follows. Colbert first raises a sufficiency of evidence claim. She then challenges the trial court's rulings on the admission of certain evidence. Colbert further asserts that the cumulative effect of the alleged errors denied her a fair trial. Next, Colbert argues that her sentence is inappropriate in light of the nature of the offenses and her character. Finally, she argues that the trial court erred by failing to vacate several convictions after merging them.

Concluding that the evidence is sufficient, Colbert waived review of her evidentiary challenges by failing to make a contemporaneous objection at the time the challenged evidence was introduced at trial, there was no denial of a fair trial, and her sentence is not inappropriate, we affirm Colbert's convictions and the sentence imposed thereon. However, we remand so that the trial court can issue a new sentencing order and abstract of judgment clarifying which convictions are vacated after merging.

We affirm and remand.

# Issues

1. Whether there is sufficient evidence to support Colbert's convictions for vicarious sexual gratification.

2. Whether the trial court erred in admitting certain evidence.

3. Whether the trial court erred in submitting a juror question to A.C.

4. Whether the cumulative effect of alleged errors in the admission of evidence amounted to a denial of a fair trial.

5. Whether Colbert's sentence is inappropriate.

6. Whether the trial court erred when it merged seven of Colbert's convictions without also vacating the convictions.

## Facts

Colbert and her husband, Jayson Colbert ("Jayson"), have four children, two daughters, S.C. and C.C., and two sons A.C. and T.C.[1] S.C. is the oldest child followed by A.C., C.C., and T.C.[2] From 2004 to 2007, Colbert, Jayson, S.C., A.C., and C.C. resided in the Noble Manor apartment complex in Noblesville. S.C. was between the ages of five (5) to eight (8), A.C. between four (4) and seven (7), and C.C. between two (2) and five (5).

In early 2016, Detective Michael Haskett ("Detective Haskett") with the Noblesville Police Department received a phone call from an individual who identified herself as an "aunt or great aunt of [A.C.] and [S.C.]" (Tr. Vol. 3 at 246). Based on his conversation, Detective Haskett contacted and interviewed

---

[1] T.C. was not yet born during the relevant time period for purposes of this appeal.

[2] The State charged Colbert with child molest against C.C. However, C.C. did not testify, and the jury returned a not guilty verdict on the child molest count pertaining to C.C. Information regarding C.C. is provided only to the extent that it might be relevant for purposes of the instant appeal.

S.C. Shortly thereafter, Detective Haskett spoke to another aunt, with whom then seventeen-year-old A.C. was living with in Ohio. Detective Haskett interviewed A.C. twice.

[6] Based upon Detective Haskett's investigation, the State charged Colbert with twenty-two counts: seven counts of Class A felony child molesting;[3] two counts of Class A felony aiding, inducing, or causing child molesting;[4] seven counts of Class B felony incest;[5] two counts of Class B felony vicarious sexual gratification;[6] two counts of Class C felony child molesting;[7] and two counts of Class D felony performing sexual conduct in the presence of a minor.[8] These charges related back to certain activities that occurred at the Noble Manor apartment between 2004 and 2007 and related to alleged offenses against A.C., S.C., and C.C.[9]

[7] A week before trial, Colbert filed a motion in limine, requesting, in part, the exclusion of her "other wrongs, prior bad acts, and non-charged conduct and/or criminal offenses not reduced to conviction." (App. Vol. 3 at 19). Her

---

[3] IND. CODE § 35-42-4-3.

[4] I.C. § 35-42-4-3.

[5] I.C. § 35-46-1-3.

[6] I.C. § 35-42-4-5.

[7] I.C. § 35-42-4-3.

[8] I.C. § 35-42-4-5.

[9] We note that the Indiana General Assembly amended the above cited statutes. Because Colbert's offenses occurred between 2004 and 2007, we apply the statutes in effect at the time of her offenses.

motion in limine also sought to exclude the introduction of "evidence from the cases and investigations conducted by the Department of Child Services, Child Protective Services, and other similar agencies." (App. Vol. 3 at 21). The State then filed a notice of intent to offer Indiana Evidence Rule 404(b) evidence at Colbert's trial. The motion reads, in part, as follows:

> 1. The State intends to offer the following evidence of crimes, wrongs, or other acts at the trial of this matter:
>> a. physical abuse committed or observed by the Defendant.
>>
>> b. drug use committed or observed by the Defendant.
>>
>> c. neglect committed or observed by the defendant.
>>
>> d. Department of Child Services involvement.
>>
>> e. Jayson Colbert's conduct and statements related to the charges against the defendant as well as the above.
>
> 2. The State intends to introduce any and all evidence and information arising from the above investigations and incidents for the purpose of proving –
>> a. motive, to show that some of the crimes charged were committed as part of a drug deal or were facilitated by physical abuse,
>>
>> b. opportunity, to explain the periods of time when the children were in the defendant's custody and care,
>>
>> c. intent,
>>
>> d. preparation,
>>
>> e. plan, in that it shows a similar series of conduct over the four charged years in which sexual abuse, physical abuse, drug abuse were all tied together. Eliminating one of those eliminates the context for the others,
>>
>> f. knowledge,
>>
>> g. identity, absence of mistake, and/or
>>
>> i. lack of accident[.]

(App. Vol. 3 at 33).

[8]     A three-day jury trial began on December 5, 2017.  At the start of trial, the parties litigated the State's 404(b) motion and Colbert's motion in limine.  The trial court ruled that the State could introduce evidence of Colbert's drug use, physical abuse, and Jayson's conduct and statements related to Colbert's charges so long as the evidence was limited to the time period when the Colberts lived at Noble Manor.  The portion of Colbert's motion in limine that sought to exclude evidence regarding other crimes, wrongs and acts was therefore denied as it pertains to the Noble Manor time period and granted to the extent that any such evidence might fall outside of the identified time period.  The portion of Colbert's motion in limine that sought to exclude evidence regarding the Department of Child Services and Child Protective Services was granted.  The trial court's pre-trial ruling is further explained by the following colloquy:

> STATE: So maybe we can present bad things that happened at Noble Manor that are related to the actual charged crimes –
>
> THE COURT: Yeah.
>
> STATE: -- but we can't -- and which would include physical abuse and drug activities.
>
> THE COURT: Absolutely.
>
> STATE: And can't do it relative to things that happened outside our slightly expanded charged timeframe.  So basically if it didn't happen at Noble Manor or when they were living in Noble Manor, we don't -- that's where the motion in limine is.  Does that make -- is that basically what the Court's ruling?

THE COURT: Yeah. That's what my ruling is. And there's a three-year gap, so I mean, I'm plus or minusing a year on each end of this just to deal with the time period delay, but since there's a three-year gap between Noble Manor and the white house, that more than covers us. So the white house we said is from 2010 to 2012, roughly, so as far as memories go, I think everything at Noble Manor is pretty much fair game. And as far as the -- so in terms of the 404(b) motion, in terms of 1, 2, and 3 and 4, as long as we're dealing with Noble Manor, I'm fine with that information coming in. Was the statements made by Jayson Colbert, that's in the '04 to '07 time period?

STATE: Yes.

(Tr. Vol. 2 at 78-79).

[9] At trial, eighteen-year-old A.C. testified that between 2004 and 2007, when his parents ran out of money to buy drugs, Colbert and Jayson invited men to the Noble Manor apartment and allowed the men to choose one of his sisters to have sexual intercourse with in exchange for drugs. He also explained at length about the instances he observed his parents engaging in sexual acts and the numerous instances when Colbert sexually abused him.

[10] A.C. testified regarding the various acts that Colbert had committed against him. For example, he testified that when he was four, he was sitting on a windowsill in an upstairs bedroom of the Noble Manor apartment when he saw Colbert walking around naked, massaging her vagina with her hands and moaning. On another occasion, A.C. was dressed in pajamas when Colbert lured him into her bedroom under the guise of watching cartoons, took off his pajama pants, and started rubbing his penis with her hand. Colbert then moved

her body on top of A.C., started "grinding" on him, and inserted his penis "inside her private parts." (Tr. Vol. 3 at 127-28).

[11] A.C. further testified that when he was four or five years old, Colbert "used to masturbate [him] and used to make [him] have sex with [a] little girl[,]" who was about two years younger than A.C. at the time. (Tr. Vol. 3 at 130). In response to follow-up questions, A.C. explained that the sex involved "private parts." (Tr. Vol. 3 at 131). When asked, "what was happening," A.C. responded, "intercourse." (Tr. Vol. 3 at 131). The State then asked A.C., "what was your penis doing," and A.C. responded, "[r]ubbing against the little girl's private part." (Tr. Vol. 3 at 131). Later, on cross-examination, counsel for Colbert specifically asked A.C.: "[a]nd you had sex with a two-year-old, perhaps, at that point in time, and sex, I mean, you stuck your penis in her vagina?" (Tr. Vol. 3 at 175-76). A.C. responded "yes." (Tr. Vol. 3 at 176).

[12] On multiple occasions, while living in the Noble Manor apartment, both Colbert and Jayson physically abused A.C. They threw him across the room and punched him in the face. On another occasion, Jayson, in Colbert's presence, threw A.C. into a fan with metal blades. A.C.'s testimony indicated that the very last time he was punched in the face by Colbert was when he was seven and "that's how [he] got taken away." (Tr. Vol. 3 at 162).

[13] At the conclusion of A.C.'s testimony, a juror submitted a question for A.C.: "How did it come about that you were removed from your home at age 7?" (Tr. Vol. 3 at 218). Colbert's attorney objected to the question as cumulative,

but the trial court overruled the objection and allowed A.C. to answer. In response, A.C. stated: "I called my sister the B word and it was in front of [Colbert]. And I got slapped across the face and this whole side of my face swelled up and my school saw it and they called Children's Services and I got removed." (Tr. Vol. 3 at 218). Colbert's attorney again objected and stated, "I guess the only cure is to ask the jury to ignore the last part of his answer and then move on." (Tr. Vol. 3 at 218). The trial court granted Colbert's request and instructed the jury "to ignore the last part of [A.C.'s] answer." (Tr. Vol. 3 at 219). Later, defense counsel asked the trial court to strike A.C.'s "DCS comment" from the record, and the trial court granted Colbert's request. (Tr. Vol. 3 at 219-20).

[14] Nineteen-year-old S.C. also testified. She described witnessing her parents have sex with their bedroom door open. S.C. also recalled that her parents had drugs in the living room and that her parents had invited drug dealers into the apartment. When asked if she was ever forced to have sex with a drug dealer, S.C. responded "not that I can remember." (Tr. Vol. 3 at 239). S.C. also testified that she was unable to recall being given a substance and then not remembering what happened.

[15] The jury found Colbert guilty of five counts of Class A felony child molesting; five counts of Class B felony incest; two counts of Class B felony vicarious sexual gratification; two counts of Class C felony child molesting; and two counts of Class D felony performing sexual conduct in the presence of a minor. The trial court then entered judgments of conviction on the sixteen counts.

At sentencing, the trial court merged the five Class B felony incest convictions into the five Class A felony child molesting convictions. The trial court also merged Colbert's two Class C felony child molest convictions together and her two Class B felony vicarious sexual gratification convictions together. The trial court declined to sentence Colbert on the seven merged counts. Thereafter, the trial court sentenced Colbert to twenty-five (25) years for each of the five Class A felony child molesting convictions; ten (10) years for the Class B felony vicarious sexual gratification convictions; four (4) years for the Class C felony child molesting conviction; and 545 days for each of the two Class D felony performing sexual conduct in the presence of a minor convictions. All of her convictions were ordered to be served consecutively, with an aggregate sentence of one-hundred forty-two (142) years in the Department of Correction. Colbert now appeals.

# Decision

## 1. Sufficiency of Evidence

First, Colbert challenges the sufficiency of the evidence for her two Class B felony vicarious sexual gratification convictions. Our standard of review for sufficiency of evidence claims is well-settled. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider only the probative evidence and reasonable inferences supporting the verdict. *Id*. Reversal is appropriate only when no reasonable fact-finder could find the

elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[18] In order to convict Colbert of Class B felony vicarious sexual gratification, the State was required to prove beyond a reasonable doubt that between June 11, 2004 and April 10, 2007, Colbert, being at least eighteen (18) years of age, to wit: twenty-four (24) to twenty-seven (27) years of age, did knowingly direct or aid or induce or cause A.C., a child under the age of fourteen (14), to wit: four (4) to seven (7) years of age to engage in sexual intercourse with another child under the age of fourteen (14), with the intent to arouse or satisfy the sexual desires of one of the children or the other person. IND. CODE § 35-42-4-5(b)(1). "Sexual intercourse" means an act that includes any penetration of the female sex organ by the male sex organ. IND. CODE § 35-31.5-2-302. The statute defining sexual intercourse "does not require that the vagina be penetrated, only that the female sex organ be penetrated." *Thompson v. State*, 674 N.E.2d 1307, 1311 (Ind. 1996). Proof of the "slightest penetration" of the female sex organ by the male sex organ is sufficient. *Mastin v. State*, 966 N.E.2d 197, 202 (Ind. Ct. App. 2012), *trans. denied*.

[19] Here, Colbert challenges the sufficiency of the evidence of sexual intercourse to support her vicarious sexual gratification convictions. She specifically asserts that "[g]iven A.C.'s testimony, it is at best ambiguous and unclear as to whether sexual intercourse occurred, and his testimony is clearly insufficient to sustain a

conviction under subsection (b)(1) of the statute." (Colbert's Br. 22). She also asserts that A.C.'s testimony was incredibly dubious.

[20] The State argues that sufficient evidence was presented from which the jury could infer that sexual intercourse had occurred. The State also asserts that A.C.'s testimony was not incredibly dubious, noting that "A.C. never wavered from his version of events on direct or cross-examination and his testimony is not so improbable or contrary to human experience that no reasonable person could believe it." (State's Br. 23).

[21] Our review of the record reveals that A.C. testified that when he was four or five years old, Colbert "used to make [him] have sex with [a] little girl[,]" who was about two years younger than A.C. at the time. (Tr. Vol. 3 at 130). In response to follow-up questions, A.C. explained that the sex involved "private parts." (Tr. Vol. 3 at 131). When asked "what was happening," A.C. responded, "intercourse." (Tr. Vol. 3 at 131). The State then asked A.C., "what was your penis doing," and A.C. responded, "[r]ubbing against the little girl's private part." (Tr. Vol. 3 at 131). Later, on cross-examination, counsel for Colbert specifically asked A.C.: "[a]nd you had sex with a two-year-old, perhaps, at that point in time, and sex, I mean, you stuck your penis in her vagina?" (Tr. Vol. 3 at 175-76). A.C. responded "yes." (Tr. Vol. 3 at 176).

[22] There is sufficient evidence of sexual intercourse to support Colbert's vicarious sexual gratification convictions. A.C. was asked directly on cross-examination whether his penis penetrated the young child's vagina and A.C. responded in

the affirmative. This was sufficient evidence to sustain her conviction. *See Parmley v. State*, 699 N.E.2d 288, 291 (Ind. Ct. App. 1998) (holding that a child molestation victim's affirmative response upon being asked by the prosecutor whether the defendant put his penis inside her was sufficient evidence to sustain the child molesting conviction), *trans. denied*. Further, as noted above, sexual intercourse "does not require that the vagina be penetrated, only that the female sex organ be penetrated." *Thompson*, 674 N.E.2d at 1311. Thus, taking A.C.'s direct examination testimony that he rubbed his penis against the young child's vagina, this was also sufficient evidence to establish sexual intercourse of the young child's female sex organ to sustain Colbert's conviction. *See Mastin*, 966 N.E.2d at 202 (holding that the evidence of penetration was sufficient to support defendant's child molesting conviction based on defendant's statements that he would push aside victim's underwear and "rub on" her vagina with his penis). Accordingly, we find that there was sufficient evidence to support Colbert's vicarious sexual gratification conviction.

[23] To the extent that Colbert argues that the incredible dubiosity rule requires reversal of her conviction, we note that the rule applies only in very narrow circumstances. *Townsend v. State*, 26 N.E.3d 619, 626 (Ind. Ct. App. 2015), *trans. denied*. Appellate courts may impinge upon a jury's function to judge the credibility of a witness, however, by applying the "incredible dubiosity" rule. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). Application of the rule is rare, and "'[t]he standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'"

*Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (quoting *Fajardo*, 859 N.E.2d, at 1208), *reh'g denied*, *trans. denied*. To warrant application of the incredible dubiosity rule, there must be "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015).

[24] Colbert suggests that A.C.'s testimony was "both internally inconsistent and inherently improbable." (Colbert's Br. 19). Such arguments, however, are issues of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. *Townsend*, 26 N.E.3d at 626. We cannot reweigh the evidence or judge the credibility of the witnesses. *See Drane*, 867 N.E.2d at 146. We also observe that it is well-established that in a prosecution involving sexual offenses upon a child, a conviction may stand solely on the uncorroborated testimony of a minor witness. *Smith v. State*, 779 N.E.2d 111, 115 (Ind. Ct. App. 2002), *trans. denied*. Additionally, the absence of a witness does not mean that a criminal offense did not occur. *See Carter v. State*, 31 N.E.3d 17, 31 (Ind. Ct. App. 2015) ("That no other person testified to witnessing or hearing [the victim] being molested does not establish that the abuse did not happen"), *reh'g denied*, *trans. denied*. Further, there was not one sole testifying witness. A.C., S.C., and Detective Haskett all testified. We cannot say that the incredible dubiosity rule applies to Colbert's case.

## 2. Admission of Evidence

Colbert contends that the trial court erred in the admission of testimony regarding her drug use, physical abuse, and the bad acts of Jayson. Colbert argues that admission of "such a voluminous amount of evidence" amounted to improper character evidence prohibited by Indiana Evidence Rule 404(b). (Colbert's Br. 27).

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

Evidence Rule 404(b) provides:

> **(b) Crimes, Wrongs, or Other Acts.**
>
> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> (B) do so before trial if the court, for good cause, excuses lack of pretrial notice.

This rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of her past propensities – the "forbidden inference." *Remy v. State*, 17 N.E.3d 396, 399 (Ind. Ct. App. 2014), *trans. denied*. In assessing the admissibility of 404(b) evidence, the court must: (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Bishop v. State*, 40 N.E.3d 935, 951 (Ind. Ct. App. 2015), *trans. denied*. The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the forbidden inference of demonstrating the defendant's propensity to commit the charged crime. *Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. The trial court has wide latitude, however, in weighing the probative value of the evidence against the possible prejudice of its admission. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind. 2000).

[28] To preserve a claim of evidentiary error for purposes of appeal, a defendant must make a contemporaneous objection at the time the evidence is introduced. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). This is true regardless of whether the appellant filed a pre-trial motion seeking to exclude the evidence in question. *Id*. "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Id*.

[29] Here, Colbert filed a pre-trial motion in limine to exclude evidence of her "other wrongs, prior bad acts, and non-charged conduct and/or criminal offenses not reduced to conviction." (App. Vol. 3 at 33). However, Colbert did

not object at the time the evidence was introduced at trial.[10] She therefore failed to preserve the issue for appeal. *See Johnson v. State*, 725 N.E.2d 864, 867 (Ind. 2000) (noting a trial counsel's failure to object to the admission of evidence waives an error for appellate review).

[30] Because Colbert waived this argument, she can prevail only by meeting the "daunting" fundamental error standard. *Griffith v. State*, 59 N.E.3d 947, 956 (Ind. 2016). The fundamental error exception to the contemporaneous-objection requirement applies only "'when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Matthews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The alleged error must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Brown*, 929 N.E.2d at 207. The fundamental error exception is "extremely narrow" and reaches only those errors that are so blatant that the trial judge should have taken action *sua sponte*. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied*. The doctrine is available only in egregious circumstances. *Brown*, 929 N.E.2d at 207.

---

[10] Colbert also argues that her alternate course of action "of objecting to this evidence at trial would have been made in vein, and the required objections would have been so frequent that a jury may have perceived that the defense was employing tactics of obstruction." (Colbert's Br. 25). This argument is not persuasive. Because Indiana recognizes continuing objections, if counsel were concerned about interrupting the flow of trial, permission to show a continuing objection could have been sought. *See Hayworth v. State*, 904 N.E.2d 684, 692 (Ind. Ct. App. 2009). *See also* Evid. R. 103(b) (Once the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal).

[31] Colbert has failed to show fundamental error in the trial court's decision to admit testimony regarding her drug use, physical abuse, and the bad acts of Jayson. Considering A.C.'s testimony about Colbert's drug use, we note that this evidence was relevant to two of the charged offenses for Class A felony aiding, inducing, or causing child molest by allegedly trading sexual intercourse with his young sisters for drugs. In fact, Colbert "conced[es] that there exists a rational link and relationship between the evidence of some drug usage and the [S]tate's charges that Colbert aided, induced or caused the offense of child molest (which read, in substance, that Colbert facilitated sex with her minor children in exchange for drugs) . . . ." (Colbert's Br. 27). A.C.'s testimony regarding Colbert's drug use was relevant and highly probative because it was connected to the manner in which she was alleged to have carried out the charged offenses. Thus, Colbert cannot show error, let alone fundamental error.

[32] Turning to the testimony regarding Colbert's physical abuse of A.C. and the bad acts of Jayson, we conclude, for the same reasons that the testimony regarding Colbert's drug use was admissible, the testimony regarding Colbert's physical abuse and bad acts of Jayson was also admissible. The jury was entitled to hear this relevant and probative evidence. Accordingly, Colbert has failed to meet the daunting task of showing that the admission of the testimony regarding Colbert's drug use, physical abuse, and the bad acts of Jayson constituted fundamental error.

### 3. Juror Question to A.C.

[33]     Colbert argues that the trial court abused its discretion when it submitted a juror's question to A.C.  Specifically, she contends that the question violated her motion in limine, inappropriately allowed 404(b) evidence, and was cumulative.  Whether to submit a juror's question to a witness is within the discretion of the trial court.  *Amos v. State*, 896 N.E.2d 1163, 1169 (Ind. Ct. App. 2008), *trans. denied*.  We will therefore review the trial court's decision only for an abuse of that discretion.  *Id*. at 1170.  Indiana Evidence Rule 614(d) provides:

> Questioning by Juror.  A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the question to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present.  Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

A proper juror question is one that allows the jury to understand the facts and discover the truth.  *Amos*, 896 N.E.2d at 1170.

[34]     Here, a juror submitted the following question to A.C.: "How did it come about that you were removed from your home at age 7?"  (Tr. Vol. 3 at 218).  Colbert objected to the question as cumulative of prior testimony.  The trial court overruled the objection, submitted the question to A.C., and he responded: "I called my sister the B word and it was in front of [Colbert].  And I got slapped across the face and this whole side of my face swelled up and my school saw it and they called Children's Services and I got removed."  (Tr. Vol. 3 at 218).

Colbert again objected and requested that the trial court "ask the jury to ignore the last part of that answer and then move on." (Tr. Vol. 3 at 219). The trial court granted Colbert's request and admonished the jury to ignore the last part of A.C.'s answer. Thereafter, Colbert requested the trial court to strike A.C.'s "DCS comment[]" from the record, and the trial court granted Colbert's request. (Tr. Vol. 3 at 219).

[35] Colbert argues that A.C.'s response to the juror question was "highly prejudicial" and there was a "substantial likelihood that the improper testimony contributed to the jury's finding of guilt." (Colbert's Br. 14). We find that asking A.C. the juror question was inappropriate for two reasons. First, the juror question referred to Rule 404(b) evidence prohibited by Colbert's motion in limine. Prior to the start of trial, the trial court granted Colbert's motion in limine to exclude, in relevant part, any "evidence from cases and investigations conducted by the Department of Child Services, Child Protective Services, and other similar agencies." (App. Vol. 3 at 21). It is clear that the answer was more than what was expected and included information prohibited by Colbert's motion in limine. The second reason the juror question was inappropriate was because it was cumulative of other evidence properly before the jury. Before A.C.'s response to the juror's question, he had already testified that he left Noble Manor because he was removed from the home. Further, on cross-examination, Colbert elicited from A.C. the following: "the very last time I got punched in the face was when I was seven; that's how I got taken away." (Tr. Vol. 3 at 162).

[36] We need not address Colbert's arguments because she sought and received an admonishment for the jury to disregard any testimony relating to DCS. We presume an admonishment is sufficient to cure any error in the admission of evidence. *Beer v. State*, 885 N.E.2d 33, 48 (Ind. Ct. App. 2008). Nevertheless, we disagree that the juror question and subsequent answer "affected Colbert's substantial rights." (Colbert's Br. 32). "[E]vidence admitted in violation of Evidence Rules 402, 403, or 404 will not require a conviction to be reversed 'if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as to not affect a party's substantial rights.'" *Houser v. State*, 823 N.E.2d 693, 698 (Ind. 2005) (citations omitted). When the brief reference to A.C. being removed by DCS is viewed in light of the overwhelming evidence of Colbert's guilt in this case, its probable impact on the jury was minor.

## 4. Cumulative Effect of Errors

[37] Colbert argues that the cumulative effect of the alleged errors in admission of evidence discussed above denied her a fair trial. The State responds that a number of trial irregularities that do not amount to error standing alone do not collectively amount to reversible error. *Reaves v. State*, 586 N.E.2d 847, 858 (Ind. 1992). Under some circumstances, the cumulative effect of trial errors may warrant reversal even if each error might be deemed harmless in isolation. *Hubbell v. State*, 754 N.E.2d 884, 895 (Ind. 2001). However, in this case, it is clear that any prejudice that may have resulted was slight and the cumulative effect of the alleged imperfections did not warrant reversal. Colbert was

"'entitled to a fair trial, not a perfect trial.'" *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting *Myers v. State*, 887 N.E.2d 170, 175 (Ind. Ct. App. 2008), *trans. denied*). Any alleged imperfection in Colbert's trial "were more isolated than pervasive in nature." *Id.*

### 5. Inappropriate Sentence

[38] Colbert next argues that her aggregate sentence of one-hundred forty-two (142) years is inappropriate in light of the nature of the offenses and her character. This Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "The 7(B) 'appropriateness' inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp*, 9 N.E.3d at 1291-92. "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley*, 972 N.E.2d at 876 (internal quotation marks and citation omitted). The defendant has the burden of persuading the appellate court that her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[39] "'[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime

committed.'" *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). Here, Colbert was convicted of five Class A felonies and sentenced to twenty-five (25) years for each conviction. The sentencing range for a Class A felony is "for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4. She was also convicted of seven Class B felonies and sentenced to ten (10) years. The sentencing range for a Class B felony is "for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being (10) years." I.C. § 35-50-2-5. She was also convicted of two Class C felonies and sentenced to four (4) years. The sentencing range for a Class C felony is "for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." I.C. § 35-50-2-6. Finally, Colbert was convicted of two Class D felonies and sentenced to 545 days for each conviction. For a Class D felony, the sentencing range is "for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1½) years." I.C. § 35-50-2-7. The trial court imposed sentences that were either advisory or below the advisory sentence.

[40] Colbert argues that the nature of her offenses does not support her aggregate one-hundred forty-two (142) years sentence. We disagree. The nature of her offenses involves Colbert, the mother of A.C., abusing her position of trust by repeatedly molesting A.C., when he was between the tender ages of four (4) and seven (7). Colbert forced A.C. to have sexual intercourse with another young

child for whom she was babysitting. She also physically abused A.C. if he did not acquiesce to her sexual demands. Taken together, this underscores the perverse and heinous nature of Colbert's crimes.

[41] As for her character, Colbert argues that her lack of criminal history warrants a reduced sentence. When considering the character-of-the-offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Here, the evidence submitted at trial is more persuasive of Colbert's character than her alleged prior good behavior. As the trial court recognized, Colbert "violate[d] probably one of the most sacred relationships out there of mother and child by not protecting her child." (Tr. Vol. 4 at 224). Indeed, not only did Colbert fail to protect A.C., she actively violated him and his innocence. Accordingly, Colbert has not persuaded us that her sentence is inappropriate.

## 6. Judgment of Conviction

Finally, Colbert argues, and the State concedes, that the trial court erred when it merged seven of Colbert's convictions without vacating the judgments of conviction. We agree. A trial court's act of merging, without also vacating, convictions that violate double jeopardy prohibitions, is not sufficient to cure the double jeopardy violation. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*. Accordingly, we remand this cause to the trial court with instructions for the trial court to issue a new sentencing order and abstract of judgment vacating Colbert's five convictions for Class B felony incest, one

conviction for Class B felony vicarious sexual gratification, and one conviction for Class C felony child molest.

[42]    Affirmed and Remanded.


Najam, J., and Crone, J., concur.